Barbara CULBREATH et al.,
Plaintiffs–Appellees,

v.

Michael DUKAKIS et al.,
Defendants–Appellees,

Locals 285 and 509, Service Employees International Union, AFL–CIO,
Appellants.

Barbara CULBREATH et al.,
Plaintiffs–Appellees,

v.

Michael DUKAKIS et al.,
Defendants–Appellees,

Massachusetts Organization of State Engineers and Scientists, Appellant.

Barbara CULBREATH et al.,
Plaintiffs–Appellees,

v.

Michael DUKAKIS et al.,
Defendants–Appellees,

Massachusetts Law Enforcement Council, Appellant.

Barbara CULBREATH et al.,
Plaintiffs–Appellees,

v.

Michael DUKAKIS et al.,
Defendants–Appellees,

National Association of Government Employees, Appellant.

Nos. 79–1502, 79–1503, 79–1505 and 79–1506.

---

**16**

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1980.
Decided Sept. 8, 1980.

Jonathan P. Hiatt, Boston, Mass., with whom Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., was on brief, for appellants, Locals 285 and 509, Service Employees Intern. Union, AFL–CIO.

Nathan S. Paven, Boston, Mass., with whom Flamm, Kaplan, Paven & Feinberg, Boston, Mass., was on brief, for appellant, Massachusetts Organization of State Engineers and Scientists.

Mark J. Dalton, Dover, Mass., with whom Neil F. Colleran, Boston, Mass., was on brief, for appellants, National Ass'n of Government Employees and Massachusetts Law Enforcement Council.

Alan K. Posner, Asst. Atty. Gen., Boston, Mass., with whom Betty E. Waxman, Asst. Atty. Gen., Boston, Mass., was on brief, for defendants–appellees, Michael Dukakis et al.

James H. Wexler, Boston, Mass., with whom Ruth Diaz, Winthrop, Mass., and Robert A. James, Boston, Mass., were on brief, for plaintiffs–appellees, Barbara Culbreath, et al.

Before ALDRICH and BOWNES, Circuit Judges, and PETTINE, District Judge.*

BOWNES, Circuit Judge.

The issue in this case is whether the district court abused its discretion in ruling

* Of the District of Rhode Island, sitting by designation.

that intervention petitions [1] did not satisfy the timeliness requirement of Fed.R.Civ.P. 24. The petitions were filed by four state employee labor unions more than four years after initiation of a suit alleging racial discrimination in the hiring and promotion practices of the Commonwealth of Massachusetts and within two months of the submission of a consent decree settling the suit. After reviewing prior decisions in this case, the consent decree and the decision below, we affirm the district court's denial of the petitions to intervene.

The "timeliness" criterion of Fed.R.Civ.P. 24,[2] left undefined by the rule, has been interpreted to require consideration of all of the circumstances surrounding the intervention:

> Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be "timely." If it is untimely, intervention must be denied. Thus, the court where the action is pending must first be satisfied as to timeliness. Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review.

*NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973). *Accord, United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395–96, 97 S.Ct. 2464, 2470–71, 53 L.Ed.2d 423 (1977). The circumstances of this case, as found by the district court and as presented in the documents filed with the district court are as follows:

On July 1, 1974, Warren B. Jackson, Barbara Culbreath and Santiago Parra filed a class action suit pursuant to 42 U.S.C. § 1983 [3] seeking declaratory and injunctive

---

1. The Massachusetts Organization of State Engineers and Scientists (MOSES) petitioned for intervention as of right, Fed.R.Civ.P. 24(a), as a party defendant, on November 21, 1978. Locals 285 and 509, Service Employees International Union, AFL–CIO (Locals 285 and 509), petitioned to intervene as a party defendant pursuant to Rule 24(a) and Rule 24(b) (permissive intervention) on February 27, 1979. The National Association of Government Employees (NAGE) and the Massachusetts Law Enforcement Council (MLEC) petitioned to intervene as party plaintiffs under Fed.R.Civ.P. 19 on February 27, 1979.

2. Rule 24 provides:

 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

 (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

 (c) Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of the United States gives a right to intervene. When the constitutionality of an act of Congress affecting the public interest is drawn in question in any action to which the United States or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of the United States as provided in Title 28, U.S.C. § 2403.

3. 42 U.S.C. § 1983 provides:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United

relief in redress of allegedly racially discriminatory hiring and promotional practices by various Massachusetts state agencies employing persons within the City of Boston. *Jackson v. Sargent*, 394 F.Supp. 162 (D.Mass.1974). The complaint alleged that state employment statistics showed a significant underrepresentation of minority persons in certain state agencies as the result of racially discriminatory hiring practices and other racially neutral practices which perpetuated the effect of past discrimination. The complaint specifically attacked job advertisement practices, the extensive use of provisional appointments, the use of racially and culturally biased job application forms and examinations, excessive reliance on examination results, the practice of hiring and promoting on the basis of patronage, the tailoring of job qualifications to the characteristics of current employees and the failure to establish effective affirmative action programs. The filing of the suit received prominent and extensive news coverage in the Boston metropolitan area.[4]

On September 10, 1974, the original defendants[5] moved to dismiss the suit on five grounds, including the plaintiff's alleged lack of standing and the failure to join as necessary parties under Fed.R.Civ.P. 19[6]

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4. A *Boston Globe* account read in part: "[T]he goal of the suit is for each agency to submit a plan, for court approval, in which new recruiting, hiring, training and promotion policies would result in employed minorities approximating their percentage of the Boston population." *Boston Globe*, July 2, 1974, p. 1, col. 1.

The *Boston Herald American* reported: "A historic suit charging sweeping violations of equal opportunity employment laws and constitutional rights was filed in federal court." *Boston Herald American*, July 2, 1974, p. 1, cols. 2 3.

5. The original defendants were the Governor of Massachusetts, Director of the Massachusetts Division of Civil Service, Chairman and members of the Massachusetts Civil Service Commission, members of the Alcoholic Beverages Control Commission, members of the Board of Trustees of State Colleges, Secretary of the Executive Office of Transportation and Construction, Superintendent of the Massachusetts Bureau of State Buildings, Commissioner of Banks, Commissioner of the Massachusetts Department of Corporations and Taxation, Commissioner of Insurance, Commissioner of the Massachusetts Department of Labor and Industries, Commissioner of the Massachusetts Department of Public Utilities, Commissioner of the Massachusetts Department of Public Welfare, and Commissioner of the Massachusetts Department of Public Works.

6. Rule 19 provides:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) Determination by the Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(c) Pleading Reasons for Nonjoinder. A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision

nonminority state employees who would be affected by any relief given under the suit. The district court ruled that plaintiff Jackson lacked standing, but denied all other motions. *Jackson v. Sargent*, 394 F.Supp. 162 (D.Mass.1975). In denying the motion to dismiss for failure to join necessary parties, the district court implicitly found that nonminority state employees were not necessary parties, but it also found that some such employees might, in appropriate circumstances, be interested parties:

> While the Court can see in this case an arguable interest on the part of white applicants for state jobs and promotions, it is not disposed to dismissing the case under Rule 19 of the Federal Rules of Civil Procedure. In an appropriate situation, the Court would entertain motions to intervene from interested parties. *See Castro v. Beecher*, 459 F.2d 725, 729, n.2 (1st Cir., 1972).

*Id.* at 173.[7] No appeal was taken from this determination. We affirmed the finding that Jackson lacked standing.[8] *Jackson v. Dukakis*, 526 F.2d 64 (1st Cir. 1975).

Shortly before our decision in *Jackson v. Dukakis, supra,* the two remaining plaintiffs moved to amend the complaint to add a back pay claim for plaintiff Culbreath pursuant to 42 U.S.C. § 2000d. The amendment was allowed on January 1, 1976. On March 11, 1976, the plaintiffs moved to certify their class pursuant to Fed.R.Civ.P. 23. The district court certified the class on September 22, 1976, as all racial minority residents of Boston who sought jobs or promotions with several named state agencies in Boston at civil service grade 20 or below. In December of 1976, the defendant state agencies indicated a willingness to settle the case. The parties immediately initiated

settlement negotiations which lasted nearly two years.

Appellant Massachusetts Organization of State Engineers and Scientists (MOSES) filed a motion to intervene as a party defendant as of right, Fed.R.Civ.P. 24(a), in November of 1978. MOSES, formed in 1977, stated in support of its motion that it should be allowed to intervene to protect the interests of members who might be affected by the relief sought by the plaintiffs. Less than one month later, on December 18, 1978, the parties submitted a stipulation of facts and a proposed consent decree to the district court.

The stipulation adopted the basic facts alleged in plaintiffs' complaint, and more: a significant underrepresentation of minorities in several state agencies in the Boston Standard Metropolitan Service Area (SMSA) and the existence of a variety of state employment practices and policies which were either racially biased or racially neutral, but tended to perpetuate the effects of practices disproportionately affecting minorities. The consent decree proposed to remedy this circumstance by requiring the defendants to conduct a vigorous affirmative action program under the continuing supervision of the district court. The decree obligated the defendants to reform the civil service examination system by reducing examination entrance requirements, by conducting examinations more frequently and in ethnic neighborhoods and by validating their results. Under the validation system, any examination having a disproportionate adverse impact on minority applicants must be justified to the district court, which may accept or reject the results. By this procedure, and by changes

---

(a)(1) -(2) hereof who are not joined, and the reasons why they are not joined.

 (d) Exception of Class Actions. This rule is subject to the provisions of Rule 23.

**7.** We interpret the district court's citation of *Castro v. Beecher*, 459 F.2d 725, 729 n.2 (1st Cir. 1972), to mean that the district court would have granted intervention to any persons occupying priority positions on eligibility lists who might not be hired or promoted because of orders resulting from the suit *and* who

were not adequately represented by existing parties.

**8.** As a result of the determination that plaintiff Jackson lacked standing, the suit was dismissed as to the following state agencies: Alcoholic Beverages Control Commission, Boston State College, Department of Labor and Industries, Division of Banking, Division of Insurance, Massachusetts Port Authority, and Massachusetts Turnpike Authority.

in the manner, place and style of recruitment, the defendants would maintain a sufficiently large pool of minority applicants to allow appointing authorities to meet their annual minority employment goals.

The minority employment goals are the heart of the consent decree. Each defendant state agency is obligated to achieve specific minority employment objectives within job categories below grade 20. The objectives are to be met by the use of a second eligibility list, along with the list normally required to be used by Massachusetts law. Appointing authorities requesting a list of eligible applicants will receive the usual civil service list containing the names of eligible applicants in the order of their competitive performance. They will also receive a list containing an equal number of names of eligible minority applicants ranked in order of competitive performance. Appointing authorities will appoint from the minority list until the annual objective is reached. The district court's supervisory role will cease when the objectives are reached, and will be revived only if the minority employment objectives are not sustained. The consent decree encompasses hiring within the Boston SMSA, rather than within the City of Boston, as proposed by the original suit. The Boston SMSA includes one hundred fifty–one municipalities in the Boston area.

Notice to the class was accomplished by publication in late December of 1978. On February 27, 1979, three more state employee labor unions filed petitions to intervene in the case. Locals 285 and 509, Service Employees International Union, AFL–CIO (Locals 285 and 509), filed to intervene as a party plaintiff. The Massachusetts Law Enforcement Council (MLEC) and the National Association of Government Employees (NAGE) filed to intervene as party plaintiffs. After a hearing, the district court denied all petitions to intervene. The

consent decree was entered on August 27, 1979.

*The Determination of Timeliness*

 In denying the petitions to intervene, the district court used the test articulated in *Nevilles v. EEOC*, 511 F.2d 303 (8th Cir. 1975) (per curiam), to determine the question of timeliness. That test requires consideration of three factors: (1) how far the proceedings have gone when the movant seeks to intervene; (2) prejudice which delay resulting from the intervention may cause to other parties; and (3) the reason for the delay in intervention. *Id.* at 305. Although we think the more comprehensive criteria articulated in *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977), also cited by the district court, better meet the totality of the circumstances test required by *NAACP v. New York*, 413 U.S. at 366, 93 S.Ct. at 2603,[9] we find no error in the district court's result, since the circumstances of this case would also justify denial of intervention under *Stallworth*. Our analysis of the circumstances in light of the *Stallworth* factors follows.

1. *The Length of Time the Intervenor Knew or Reasonably Should Have Known of His Interest Before He Petitioned to Intervene.*

The district court was warranted in finding that each of the four labor unions knew or should have known of the filing of the suit and the possible effect of the suit on their nonminority members long before they petitioned to intervene.

With the exception of MOSES, formed in 1977, each of the labor unions should have learned of the suit from the newspaper stories which appeared on page one of both of Boston's major daily newspapers the day after the suit was filed explaining the nature and scope of the complaint and gener-

---

9. In *NAACP v. New York*, 413 U.S. 345, 364 69, 93 S.Ct. 2591, 2602–04, 37 L.Ed.2d 648 (1973), the Supreme Court reviewed a denial of a motion to intervene on the basis of four factors: (1) the length of time the petitioner knew or should have known of the pendency of

the suit; (2) the promptness with which the petitioner acted once aware of the suit; (3) unusual circumstances warranting intervention; (4) unusual circumstances militating against intervention.

ally describing the relief sought.[10] Because persons who became members of MOSES should have been aware of the suit for the same reasons, their knowledge is imputed to MOSES. In addition, as the case progressed, the district court issued a published decision in which it specifically invited intervention from proper parties. *Jackson v. Sargent*, 394 F.Supp. 162. The case was again discussed in the press. *See, e. g., Boston Globe*, February 8, 1975, p. 3, cols. 1–2. This court subsequently affirmed the district court in our published opinion in *Jackson v. Dukakis*, 526 F.2d 64.

We see little merit in the unions' contention that, under the *Stallworth* test, they did not learn of their interest in the suit until the class was certified and the relief proposed in the consent decree was made known. While, as alleged by the unions, knowledge of a suit is not necessarily knowledge of one's interest, in this instance, the existence of interest was obvious, *see Stallworth v. Monsanto Co.*, 558 F.2d at 264, and the only lack related to its extent, a matter of degree, not of kind. The complaint, the newspaper stories and the published court decisions all stated that the purpose of the suit was to force each agency to adopt hiring and promotion policies that would result in employed minorities in percentages approximately equal to their proportion of the population of the City of Boston. It should have been apparent to the unions that some nonminorities would be passed over in favor of minorities to achieve this goal. When the consent decree expanded relief to state agencies in the Boston SMSA, all that changed was the number of nonminority union members to be affected. The expansion of relief may well have increased the unions' internal political interest, but it did not alter their legal interest.

Furthermore, the unions strain credulity in contending that they were unaware of the suit until the publication of notice to the class in Boston newspapers. Unions capable of noticing legal advertisements of notice to a class buried in the depths of a major newspaper, *e. g., Boston Herald American*, January 30, 1979, p. 30, cols. 5–6, ought to be able to notice news stories on the front page. *See, e. g., Boston Globe*, July 2, 1974, p. 1, col. 1.

The district court had ample grounds for finding that NAGE, MLEC and Locals 285 and 509 reasonably should have known of their interest in the suit on or about July 2, 1974, when Boston newspapers carried page one stories detailing the filing of the suit and the nature of the relief sought. *See Pennsylvania v. Rizzo*, 530 F.2d 501 (3d Cir.), *cert. denied sub nom. Fire Officers Union v. Rizzo*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). MOSES reasonably should have known of its interest in the suit at the union's inception in 1977. *See Mack v. General Electric Co.*, 63 F.R.D. 368, 369 (E.D.Pa.), *aff'd*, 535 F.2d 1247 (3d Cir. 1974). Each of the unions reasonably should have learned of the suit as the case progressed from the published court decisions in the case and from the press coverage those decisions received. We see no excuse for the failure of large, sophisticated labor unions to learn of a suit and reported decisions so related to the promotion prospects of their members. *See NAACP v. New York*, 413 U.S. at 366, 93 S.Ct. at 2603.

2. *Prejudice to Existing Parties Due to the Union's Failure to Petition for Intervention Promptly.*

Only under part (b) of the rule (permissive intervention) is prejudice to existing parties specified as a factor to be considered. Fed.R.Civ.P. 24(b). Part (a) of the rule (intervention as of right) does not refer to prejudice to existing parties. Nevertheless, we think that on the issue of timeliness, such prejudice is one of the circumstances surrounding intervention requiring consideration under both parts of the rule. To this extent, we modify the *Stallworth* rule limiting consideration of prejudice to existing parties. To hold otherwise, *see Stallworth v. Monsanto Co.*, 558 F.2d at 265–67, would encourage putative intervenors to sit on their rights to the detriment

---

**10.** *See* note 4, *supra.*

of the parties carrying the load of the lawsuit. Moreover, the purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court. *United States v. Allegheny–Ludlum Industries, Inc.*, 553 F.2d 451, 453 (5th Cir. 1977), *cert. denied sub nom. United Steelworkers Justice Committee v. United States*, 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978).

We see little prejudice to the parties caused by the failure of the unions to intervene more promptly. *See Stallworth v. Monsanto Co.*, 558 F.2d at 265. In fact, we note that, had any such prejudice been apparent, it could have been remedied by joinder of the unions. We do, however, perceive real prejudice to the parties if the unions are allowed to intervene. The membership of the unions, which may be assumed to reflect the racial mix of the defendant state agencies, is likely to oppose the goal provisions of the consent decree. If that is the case, the relief the plaintiffs seek, and which the defendants agree is justified, will be delayed or even denied. Indeed, because of the delayed intervention of the unions, several of the target dates in the consent decree have already been nullified. As long as this suit remains unresolved, the public and private resources invested in it lie fallow and opportunities to rectify the wrongs of which the plaintiffs complain are unrealized. Assuming the stipulation of facts to be correct, as we must, hirings and promotions under the present system in the defendant agencies while the suit is unresolved will serve only to exacerbate the racial imbalance in the agencies. The unions' intervention is based not on technical reasons, such as specific problems with application of the consent decree to the seniority system or with the identity of the parties, *see EEOC v. American Tel. & Tel. Co.*, 365 F.Supp. 1105 (E.D. Pa.1973), but on opposition to the central principle of the consent decree. The courts strongly favor resolution of suits such as this one by voluntary agreement, and there is a distinct probability that the intervention of the unions will destroy the consent decree and force a trial on the merits.

3. *The Prejudice the Unions Would Suffer if They Are Not Allowed to Intervene.*

The unions assert two sources of prejudice. First, they recite their duty of fair representation of all union members and argue that they will be unable to protect the interests of their members in the future unless they participate in the formulation of the consent decree. However, the unions concede that the consent decree will place them in the difficult position of representing both minority and nonminority members competing for the same positions. The unions' inherent problem of conflicting loyalties is the same in the formulation of the consent decree as in the implementation of it; we see no particular prejudice flowing from their inability to participate in its formulation.

The unions' second claim of prejudice, that the minority employment and promotion mechanisms of the consent decree violate the fourteenth amendment and sections 703(h) and (j) of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2(h) and (j), has caused us more concern. While this is not an unusual argument in a race discrimination case, the tenuous posture of the unions gives it added importance. If we affirm the district court's denial of intervention for untimeliness, the unions and their members may be forever foreclosed from challenging the goal mechanisms of the decree. Collateral attack on the decree will be impossible because only the district court supervising implementation of the decree will have subject matter jurisdiction to modify the decree. *See O'Burn v. Shapp*, 70 F.R.D. 549 (E.D.Pa.), *aff'd*, 546 F.2d 418 (3d Cir. 1976), *cert. denied*, 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977); *Construction Industry Combined Committee v. Operating Engineers Local 513*, 67 F.R.D. 664, 666 (E.D.Mo.1975). Intervention to modify the decree, the proper procedural recourse under the circumstances, *Black and White School Children of Pontiac v. City of Ponti-*

ac, 464 F.2d 1030 (6th Cir. 1972), will be barred by the doctrine of res judicata.[11]

■ The essence of the timeliness determination, however, is whether the unions received such notice and opportunity to be heard as to satisfy the due process rights to be accorded persons so situated. *See generally Hansberry v. Lee,* 311 U.S. 32, 43, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940); *see also NAACP v. New York,* 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed. 648. The record shows that the district court entered the consent decree on August 27, 1979. We must assume that it determined that the settlement secured by the consent decree was fair, adequate and reasonable, *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977), and not unlawful. *United States v. City of Jackson,* 519 F.2d 1147, 1151 (5th Cir. 1975). In reviewing the decree, the district court was undoubtedly aware that racial preference schemes are an accepted means of remedying past discrimination in our society. *See United Steelworkers v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979); *University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); *United States v. City of Miami,* 614 F.2d 1322, 1335 (5th Cir. 1980); *Boston Chapter NAACP Inc. v. Beecher,* 504 F.2d 1017 (1st Cir. 1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975); *Associated General Contractors of Massachusetts, Inc. v. Altshuler,* 490 F.2d 9 (1st Cir. 1973), *cert. denied,* 416 U.S. 957, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974). The only serious question before the district court would have been whether the stipulation of facts constituted a finding of past discrimination sufficient to jus-

tify the use of racial preferences at the expense of innocent persons. *See University of California v. Bakke,* 438 U.S. at 301, 307, 98 S.Ct. at 2754, 2757 (Powell, J.), and at 363–66 (Brennan, J.). Although the entry of the consent decree does not constitute a finding of facts or a ruling of law, *Cotton v. Hinton, supra,* it is a determination of probability of success on the merits. *Flinn v. FMC Corporation,* 528 F.2d 1169 (4th Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976). Moreover, we note that none of the intervenors appear to have disputed the statistical evidence of racial discrimination in the employment and promotion practices of the defendant agencies. The stipulation of facts would have been a powerful and conclusive admission of the facts contained therein under Fed.R.Civ.P. 36(b).[12] Viewing these facts from a position considerably enhanced by our extensive exposure to the Massachusetts civil service system, *see Burns v. Sullivan,* 619 F.2d 99 (1st Cir. 1980); *Lavash v. Kountze,* 604 F.2d 103 (1st Cir. 1979); *Boston Chapter NAACP, Inc. v. Beecher,* 504 F.2d 1017; *Castro v. Beecher,* 459 F.2d 725, 732, we have no difficulty in upholding the district court's conclusion that plaintiffs enjoyed a substantial probability of success on the merits. *Flinn v. FMC Corporation, supra; United Steelworkers of America v. Weber,* 443 U.S. at 198 n.1, 99 S.Ct. at 2725 n.1; *Associated General Contractors of Massachusetts, Inc. v. Altshuler,* 490 F.2d 9. We consider the prejudice flowing to the unions from denial of intervention to be as slight as the unions' probability of success on the merits of the issues they would raise upon intervention.

---

11. The same considerations of timeliness governing this appeal would control attempts to use other procedural devices, such as a motion for relief from judgment, Fed.R.Civ.P. 60(b), to achieve the same result as a motion to intervene. *Hefner v. New Orleans Public Service, Inc.,* 605 F.2d 893, 897 n.12 (5th Cir. 1979), *appeal dismissed,* 445 U.S. 955, 100 S.Ct. 1639, 64 L.Ed.2d 231 (1980).

12. Rule 36(b) provides:

(b) Effect of Admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.

Subject to the provisions of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding.

4. *The Existence of Unusual Circumstances Militating Either For or Against Intervention.*

We are not aware of any unusual circumstances militating for intervention.

The supplemental agreement to the collective bargaining agreement between the unions and the defendant state agencies provides a major factor militating against intervention. That agreement provides, in part:

The provisions contained in Article 14 and Article 18 shall not be construed to impede the implementation of affirmative action programs developed by departments/agencies in accordance with the goals set forth in Article 6.

Article 6 of the agreement provides:

The Union and the Employer agree that when the effects of employment practices; *regardless of their intent*, discriminate against any group of people on the basis of race . . . , *specific positive and aggressive* measures must be taken to redress the effects of past discrimination, to eliminate present and future discrimination, and to ensure equal opportunity in the areas of hiring, upgrading, demotion or transfer . . . (emphasis added).

Thus, it appears that the consent decree, contrary to the contentions of the unions, is consistent with the collective bargaining agreement in general and in particular with the seniority provisions the unions contend will be superseded by the minority hiring mechanisms of the consent decree. These provisions indicate that unilateral action by either party to remedy racial discrimination would not contravene the collective bargaining agreement and cast serious doubt as to whether the unions' natural interest in the protection of seniority systems, *see Franks v. Bowman Transportation Co.*, 424 U.S. 747, 766, 96 S.Ct. 1251, 1265, 47 L.Ed.2d 444 (1976); *Stevenson v. International Paper Co.*, 516 F.2d 103, 118 (5th Cir. 1975), rises to the level of a significant protectable interest. *See Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971); *Pennsylvania v. Rizzo*, 530 F.2d 501, 504 (3d Cir. 1976), *cert. denied sub nom. Fire Officers Union v. Rizzo*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); *In re Penn Central Commercial Litigation*, 62 F.R.D. 341, 346 (S.D.N.Y.1974), *aff'd*, 515 F.2d 505 (2d Cir. 1975).

———

Our review of the circumstances surrounding the attempted intervention of the four state employee unions convinces us that, although the district court used a less comprehensive standard for determining timeliness than we think appropriate, it did not abuse its discretion in denying the petitions. The passage of nearly four years from the time the unions reasonably should have known of initiation of the suit until the filing of the petitions to intervene places a burden on the unions to make a strong showing justifying their intervention. *Moten v. Bricklayer's Union*, 543 F.2d 224, 228 (D.C.Cir.1976); *Pennsylvania v. Rizzo*, 530 F.2d 501. The unions have made no showing of significant prejudice which is likely to result from denial of intervention. We are aware of no unusual circumstance militating for intervention. *See NAACP v. New York*, 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648. On the other hand, the stance of the unions on the racial preference mechanisms, the core of the consent decree, makes clear that the intervention of the unions would almost certainly result in a long delay in the settlement of a case already six years old and may result in the case having to go to trial. Either eventuality will require additional expenditures of scarce public and private resources and will delay the relief both parties agree is justified by the facts. As we observed earlier, additional delay may well result in the exacerbation of the racial imbalance in the defendant state agencies and increase the impact of the consent decree on nonminority employees in those agencies. In addition, Article 6 of the collective bargaining agreement between the unions and the defendant state agencies is strong evidence that the unions have voluntarily waived the opportunity to object to the affirmative action programs agreed to by the consent

decree.[13] The circumstances weigh heavily and conclusively against intervention.[14]

*Affirmed.*

ALDRICH, Senior Circuit Judge (concurring).

I regret that I cannot agree fully with the court's opinion. Without discussing it in detail, I think there is over-concern with the question of possible harm to appellants. Passing the question of how we are able to determine the merits of appellants' case when they have not been allowed to present it, I do not believe we should have to do so. There should be two principal issues—was there a substantial, unexcused delay after appellants knew, or should have known, of an interest and right to seek to intervene, and are the parties seriously prejudiced by the delay, viz., to what extent would they be worse off by intervention when sought, as distinguished from when it reasonably could have been sought? If the unexcused delay would cause substantial prejudice to the parties, appellants should bear the loss, as any other defaulting party. I would view prejudice to them only as part of a claim of unusual circumstances, *NAACP v. New York*, 1973, 413 U.S. 345, 368, 93 S.Ct. 2591, 2604, 37 L.Ed.2d 648—not here possible—and not something to be considered in the ordinary course.

---

**13.** We do not reach that question; we merely note that its existence weakens the unions' case.

**14.** NAGE and MLEC devoted most of their brief to an argument that, since the employee unions should have been joined as necessary parties under Fed.R.Civ.P. 19, they now have a right to intervene under that rule. This argument ignores two important facts. First, the district court ruled in *Jackson v. Sargent*, 394 F.Supp. 162 (D.Mass.1975), that white employees were not necessary parties. *Accord, Hibbler v. Miller's of Birmingham Bankhead Highway, Inc.*, 496 F.2d 1171 (5th Cir. 1974). Second, Rule 19 does not give any party a right to join an action. The rule provides only the remedy of dismissal for failure to join a necessary party or, in the alternative, joinder of the necessary party by the court. Rule 19 is not a route around the timeliness requirement of intervention under Rule 24.