**Ronald W. CATERINO, et al.,**
**Plaintiffs, Appellees,**

v.

**J. Leo BARRY, etc., et al.,**
**Defendants, Appellees.**

**Teamsters Local Union No. 122, et al.**
**Intervenors, Appellants.**

**No. 90–1525.**

United States Court of Appeals,
First Circuit.

Heard Sept. 11, 1990.

Decided Dec. 26, 1990.

Stephen R. Domesick, for intervenors, appellants.

James T. Grady with whom John J. Kenney, Jr., and Grady and Dwyer were on brief for defendants, appellees J. Leo Barry, et al.

Marie P. Buckley with whom Anthony M. Feeherry and Goodwin, Procter & Hoar were on brief for plaintiffs, appellees Ronald W. Caterino, et al.

Before CAMPBELL, Circuit Judge, COFFIN, Senior Circuit Judge, and SELYA, Circuit Judge.

COFFIN, Senior Circuit Judge.

A local Teamsters union and two of its members sought to intervene in a class action lawsuit brought by United Parcel Service employees against the trustees of the New England Teamsters and Trucking Industry Pension Fund ("the Fund"). The district court left open the possibility of intervention at the remedial stage of the case—if one is required—but denied intervention for the liability proceedings on two grounds: appellants' motion was untimely and their interests were adequately represented by the existing parties. We find no abuse of discretion in the decision to deny intervention, and therefore affirm.

## I.

Five UPS employees filed this lawsuit in December 1986, claiming that the Fund's trustees had breached their fiduciary duty by assigning the UPS workers an unreasonably low benefit level and by prohibiting transfer of assets contributed on the workers' behalf to a separate pension plan. Plaintiffs claim entitlement to a higher benefit than other employees whose employers contribute to the Fund at the same rate as UPS because of their uniquely favorable actuarial characteristics. *See* Affidavit of Steven H. Klubock at ¶ 7, Appendix at 138. Plaintiffs argue that these actuarial attributes mean that contributions made on their behalf end up heavily subsidizing the pensions of non-UPS workers; plaintiffs argue that UPS dollars instead should be used to support an increased benefit for UPS pensioners.[1]

---

1. This description of plaintiffs' argument is based primarily on oral argument, the affidavit of actuary Steven Klubock and the Joint Stipulation dated June 4, 1990 that was signed by

The prospective intervenors—two non-UPS employees and the local union that represents them, Teamsters Local 122—claim entitlement to the same benefit as the UPS class members because their employer pays into the Fund at the same rate as UPS. In light of their assertedly equal standing, the intervenors contend that any resolution of the present parties' claims without their participation presents a strong possibility of unfairness to them.

Appellants first sought to intervene as defendants in March 1990, more than three years after the action began. Discovery had closed in mid–1989, and in October of that year the court had scheduled trial for June 25, 1990. In addition, substantial other pretrial activity had occurred. In July 1987, the district court denied the defendants' motion to dismiss. In October 1988, the district court denied cross-motions for summary judgment. On March 29, 1989, the court granted plaintiffs' motion to certify the plaintiff class.

The district court denied the motion to intervene on May 8, 1990, with a brief notation written at the bottom of the first page of applicants' motion. The court's ruling was as follows:

> Motion to Intervene is *denied.* The Court will entertain a renewed Motion to Intervene at the remedy stage of the case, if such a stage is required.

The proposed intervenors then appealed to this court. After oral argument, we remanded the case because, without a statement of reasons from the district court, we were unable to perform a meaningful review of that court's action. *See* Fed.R. Civ.P. 24(a) and (b) (enumerating requirements for intervention). We therefore directed the court to submit an explanation "specify[ing] which intervention requirement, or combination of requirements, it

found that appellants have failed to meet" and "its reasons for so finding," Order of the Court, Sept. 24, 1990.

The district court responded by listing two requirements. First, it held that "[a]ppellants failed to establish that their interests would not be adequately represented at the *liability* stage by the [D]efendants." Memorandum, Sept. 27, 1990 (emphasis in original). Second, the court held that the intervention motion was not timely filed: "To have granted said Motion at that late date would have caused a delay in the trial of a 1986 case which had been scheduled since October 6, 1989 for trial on June 25, 1990. Fed.R.Civ.P. 24(b)(2)." *Id.*

We now resume consideration of the appeal.

## II.

Appellants moved to intervene as defendants in this action either as of right under Rule 24(a) or permissively under Rule 24(b). We concentrate our discussion on Rule 24(a) because our conclusion that the court acted within its discretion in denying intervention as of right effectively disposes of the permissive intervention question as well. *See International Paper Co. v. Town of Jay*, 887 F.2d 338, 344 (1st Cir. 1989) (A " 'district court has *less* discretion to limit the participation of an intervenor of right than that of a permissive intervenor.' ") (quoting *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382, 107 S.Ct. 1177, 1185, 94 L.Ed.2d 389 (1987) (Brennan, J., concurring)) (emphasis in *International Paper*).

■ Rule 24(a) provides that an applicant seeking intervention as of right must meet four requirements. First, the application must be timely. Second, the applicant

---

counsel for both plaintiffs and defendants. Plaintiffs' argument apparently has been refined during the pendency of the litigation. In their complaint, plaintiffs seem to have raised a more general claim, that the benefit for employees whose employers historically contributed to the Fund at the maximum rate was lower relative to the contributions made on their behalf than the benefits of employees whose employers contributed to the Fund at a lower rate. *See* Complaint

at ¶¶ 36–38. *See also* District Court Memorandum of Decision, July 31, 1987 (denying defendants' motion to dismiss). This more general argument would seem applicable to all employees, whether or not working for UPS, whose employers made contributions on their behalf at the maximum rate for an extended period of time. The present argument, however, distinguishes UPS employees from all other Fund participants.

must have a direct and substantial interest in the subject matter of the litigation. Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest. Finally, the applicant's interest must be inadequately represented by existing parties. *Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir.1989); *International Paper*, 887 F.2d at 342.

 An applicant's failure to meet any one of these requirements is a sufficient basis for denying intervention as of right, *Travelers*, 884 F.2d at 637, and our review is strictly limited to deciding whether the district court abused its discretion. *International Paper*, 887 F.2d at 344. In this case, although the district court gave two bases for its decision—adequacy of representation and untimeliness—we need go no further than the court's conclusion that intervention in the liability phase of the case should be denied as untimely sought.

 The timeliness requirement "is of first importance," *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 143 (1st Cir.1982), and the trial court's determination on that factor is entitled to substantial deference. *See NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973) (establishing abuse of discretion standard for timeliness factor); *United States v. Metropolitan Dist. Comm'n*, 865 F.2d 2, 5 (1st Cir.1989). Despite limited analysis by the district court, we are unable to say that its decision to reject the application as untimely fell outside the wide boundaries of its discretion.

 In *Culbreath v. Dukakis*, 630 F.2d 15, 17, 20–24 (1st Cir.1980), we specified four factors to be considered in evaluating the timeliness of an intervention motion. These factors, as recently reiterated in *Metropolitan Dist. Comm'n*, 865 F.2d at 5, are:

(i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention.

We regret that the district court, in its response after remand, failed to address each of these factors. The court instead referred only to an anticipated delay in the trial if intervention were granted, a circumstance relevant to the prejudice factor. We nevertheless have chosen not to remand the case again and instead have examined whether the decision to deny intervention is supportable upon full application of the four-part *Culbreath* test to the facts contained in the record. *See Fiandaca v. Cunningham*, 827 F.2d 825, 833–35 (1st Cir.1987) (applying *Culbreath* test, "a step not taken by the district court," to determine whether that court could have found application to be untimely). We thus turn to the four *Culbreath* factors.

(i) *The promptness of applicants' motion.* The individual applicants claim not to have known anything about this case until the first week of March 1990. The union's chief executive officer, however, acknowledged in an affidavit dated March 15, 1990, that he had read about the litigation in a Boston newspaper "[s]ome time ago." The officer, John F. Murphy, recalled that the news story "indicated that several UPS employees were suing the Pension Fund to get a better pension." Murphy stated that he learned in November 1989 for the first time "that this lawsuit involved more than a few employees and could have an impact on the Union and its participants."

The applicants argue that their motion was prompt for purposes of the *Culbreath* test, despite the passage of more than three years since filing of the case, because they acted quickly after learning of the lawsuit's potential impact on themselves. At least with respect to the union, this argument is without merit.

Murphy admitted that he saw a newspaper report on the case long before March 1990. Even if the report Murphy saw re-

ferred only to the original five UPS plaintiffs, subsequent publicity and minimal investigation should have alerted him to the fact that this could become a substantial class action lawsuit. The plaintiffs' 1986 complaint requested class certification. Two articles in Boston newspapers in 1988 also reported the large numbers of UPS employees potentially involved. *See* The Boston Globe, Oct. 7, 1988, at 90 ("Teamsters pension fund attacked; Move is made to split 12,000 UPS workers from the program"); The Boston Herald, Aug. 12, 1988, at 58 ("UPS drivers consider breakaway from Teamsters"). Moreover, it seems that a lawsuit in which only a few UPS employees challenged the benefit procedure would have had the same impact on the union at the *liability* stage as a lawsuit involving thousands of UPS employees; in either case, the issue would be the propriety of the benefit levels set for UPS employees.

In addition, Murphy does not, and cannot, argue that the union's interest only recently developed because of a change in the nature of plaintiffs' claims. From the outset, the UPS employees asserted entitlement to higher pension benefits, the same claim that the applicants now say implicates their rights. *Cf. Fiandaca*, 827 F.2d at 834 (applicants had no inherent interest in the merits of the litigation until after defendant proposed to settle dispute by implicating plaintiffs' residence).

It was incumbent upon Murphy, as the union's top executive, to probe behind the headlines that he admitted seeing about this case. *Cf. Culbreath*, 630 F.2d at 21 ("We see no excuse for the failure of large, sophisticated labor unions to learn of a suit and reported decisions so related to the promotion prospects of their members."). *See also Narragansett Indian Tribe v. Ribo, Inc.*, 868 F.2d 5, 7 (1st Cir.1989) ("Parties having knowledge of the pendency of litigation which *may* affect their interest sit idle at their peril.") (emphasis added). Local 122's delay in seeking intervention is therefore not excusable.

The circumstances differ somewhat with respect to the individual applicants, who did not become aware of the lawsuit at all until March 1990. They, too, however, had access to information about the litigation through the news coverage. In addition, the individuals' lack of knowledge is directly attributable to the union's failing to pursue the information it possessed. We think it is within the trial court's discretion to refuse to allow the individual applicants to evade, through personal ignorance, the repercussions of dilatory action on the part of their group representative—at least when the individuals, as in this case, had the opportunity to learn of the lawsuit through the press or other public means.

The district court, therefore, properly could have found that the applicants unduly delayed in filing their intervention motion.

(ii) *Prejudice to existing parties.* This factor apparently weighed heavily in the district court's mind. Avoiding such prejudice has, in fact, been "described as 'the purpose of the basic requirement that the application to intervene be timely,'" *United Nuclear Corp.*, 696 F.2d at 143 (quoting *Culbreath*, 630 F.2d at 22). The court believed that allowing intervention just over three months before the scheduled trial date, and months after the close of discovery, inevitably would delay the start of the trial—unquestionably a detriment to the plaintiffs.[2] Appellants sought to defuse the potency of this factor by stating in their motion that, if permitted to intervene, they would not seek to reopen discovery. The fact remains, however, that plaintiffs almost certainly would need to conduct discovery of appellants to adequately prepare for a trial that included the appellants as defendants. We previously have noted that intervention is less likely to cause prejudice when it relates to an ancillary issue than when it relates to the merits, *see Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 786 (1st Cir.1988). In this case, the applicants seek to oppose plaintiffs' primary argument that UPS employees are

---

**2.** The defendants have supported the proposed intervenors' efforts to join the lawsuit, and we

therefore give no weight to any potential disadvantage to them.

entitled to higher benefits than other employees, such as themselves. The district court evidently recognized that plaintiffs would want to understand the nature of the applicants' argument in order to meet it, and would need time to prepare. As a result, a delay in the trial reasonably could be expected.

Thus, the second factor supports the district court's conclusion of untimeliness.

(iii) *Prejudice to the prospective intervenors.* Appellants argue that this factor weighs in their favor because they will be required to abide by the results of a litigation that directly impacts them without having had a voice in the decision. In our view, however, the potential harm to appellants from exclusion on *liability* issues is minimal. Indeed, appellants' brief fails to explain how their absence from the liability phase would be likely to affect the outcome on liability, and it instead concentrates on the ways in which exclusion from the remedial phase of the case would be prejudicial. The nature of the case reveals that this was not an accidental imbalance of attention.

The question on liability is whether the defendant trustees breached their fiduciary duty to the UPS employees by setting pension benefits without regard to those employees' uniquely favorable actuarial characteristics. We think it unlikely that the applicants' position on this particular question would differ from that of the Fund. Both presumably would seek to show that the UPS plaintiffs are not entitled to singularly high benefits, and that the Fund properly may refuse to allow the UPS plaintiffs to set up a separate pension plan. It is not until there is a finding of liability against the trustees that the interests of the applicants would be likely to diverge markedly from that of the trustees. Once the focus turns toward developing a remedy, the trustees' responsibility would be to balance the interests of the UPS employees against the other employees served by the Fund, including the applicants. At that point, it would be important for the applicants to have a voice in the process equivalent to that of the plaintiffs.[3]

This, at least, must have been the view of the district court judge, who explicitly acknowledged that the intervention factors might play out differently when, and if, remedial issues are reached. We find no abuse of discretion in this view, and thus conclude that the third timeliness factor also supports the court's decision.[4]

**3.** We recognize that plaintiffs' argument originally was formulated more broadly in that it challenged generally the benefit level set for employees whose employers had contributed to the Fund at the maximum rate for a substantial period of time. *See supra* at note 1. Under that formulation, the applicants, who claim to fall in that category and thus be similarly situated to the plaintiffs, would have more of a direct interest in the liability issue. We question whether the prejudice from a denial of intervention would be any greater, however, even if we analyzed the issue in the context of the broader argument. It seems that the applicants' interest then would be aligned with one or the other of the parties, depending upon applicants' outlook. They could join the plaintiffs in claiming entitlement to a higher benefit for their class of employees or join the trustees in claiming that the health of the Fund requires the benefit system to continue in its present form.

**4.** This factor—the prejudice suffered by the prospective intervenors from a denial of intervention—sometimes turns solely on whether the applicant demonstrates inadequate representation by an existing party, which is also a general intervention requirement. *See, e.g., Narragansett Indian Tribe,* 868 F.2d at 8; *United Nuclear*

*Corp.,* 696 F.2d at 143. We do not believe, however, that a finding of no prejudice as part of the timeliness inquiry, based on adequate representation, necessarily leads to a finding of adequate representation on the general requirement, and, as earlier stated, we explicitly refrain from deciding the issue of adequate representation in this case. But it is worth noting that "the adequacy of existing representation is sometimes regarded as only a minimal barrier to intervention," *Moosehead San. Dist. v. S.G. Phillips Corp.,* 610 F.2d 49, 54 (1st Cir.1979), and that "[i]f the applicant shows that the representation *may be* inadequate ..., then the court is precluded from finding that the interest is adequately represented," *Flynn v. Hubbard,* 782 F.2d 1084, 1090 (1st Cir.1986) (Coffin, J., concurring) (emphasis in original). *See also Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, n. 10, 30 L.Ed.2d 686 (1972). Moreover, the burden of persuasion that representation is adequate appears to rest on the party *opposing* intervention. *See Flynn,* 782 F.2d at 1090 n. 4; C. Wright, A. Miller & M. Kane, 7C *Federal Practice and Procedure* § 1909 at 314 (1986). Thus, it may be that the inadequate representation requirement would be met in circumstances that do not establish prejudice

(iv) *Unusual circumstances.* Although no special circumstance appears to militate *for* intervention, it is significant that the district court's decision against intervention did not deny all participation by the applicants in this litigation. The district court obviously anticipates two discrete parts of the case, and has indicated its willingness to consider intervention again if it is necessary to conduct proceedings on a remedy. We are confident that the court would give serious consideration to a renewed motion to intervene and, indeed, think it unlikely based on our review of the case that the court would deny such a motion. Thus, it appears that the applicants will have the opportunity to participate in the case at the stage they acknowledge is the most critical for them. In our view, this later opportunity to participate supports the district court's decision not to delay the start of the liability phase of the case. Any possible prejudice resulting from plaintiffs' exclusion from the first part of the case would likely be offset by their later participation.

In summary, then, our review of the *Culbreath* factors fails to turn up any indication that the district court acted outside its discretion in denying the motion to intervene at this juncture of the case. Because our task is to determine only whether the court properly balanced the timeliness factors, it is clear that in this case, where the factors uniformly support the court's decision, there was no abuse of discretion. Our scrutiny suggests that the court articulated only the delay factor because that loomed large in its mind and none of the other factors counseled in favor of intervention at the liability stage.

*Accordingly, the judgment of the district court is affirmed. This court having issued a decision on the merits, plaintiffs' motion regarding jurisdiction is dismissed as moot. Costs to plaintiffs.*

under the *Culbreath* test. We raise this point only to clarify that our opinion does not address the question of adequate representation; we ex-

press no view at this time on whether the two factors should lead to similar results.