**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

ANDRE G. BOUCHARD
CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: August 27, 2015
Date Decided: September 2, 2015

Susan Wood Waesco, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899

Kevin R. Shannon, Esquire
Berton W. Ashman, Jr., Esquire
Potter Anderson Corroon LLP
1313 North Market Street
Wilmington, DE 19899

Gregory P. Williams, Esquire
Lisa A. Schmidt, Esquire
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

RE: ***Shawe v. Elting, et al.***
C.A. No. 9686-CB

Dear Counsel:

This letter opinion resolves the motion Shirley Shawe ("Ms. Shawe") filed on August 24, 2015, seeking to intervene in C.A. No. 9686-CB for the purpose of filing a motion to alter or amend the Order entered on August 13, 2015, dismissing the claims in that action with prejudice (the "Dismissal Order"). For the reasons explained below, the motion to intervene is denied as untimely.

### 1.    Background

On August 13, 2015, the Court issued a 104-page post-trial memorandum opinion ("Opinion") adjudicating claims in four related actions (C.A. Nos. 9661-CB, 9686-CB,

9700-CB, and 10449-CB) that, although not technically consolidated, had been coordinated and functionally consolidated for purposes of discovery, pre-trial proceedings, trial, and post-trial proceedings. The Opinion dismissed with prejudice certain claims Philip Shawe asserted against Elizabeth Elting in C.A. No. 9686-CB derivatively on behalf of TransPerfect Global, Inc. (the "Company"). Ms. Shawe, Philip Shawe's mother and a holder of 1% of the stock of the Company, was not named as a party in C.A. No. 9686-CB, but she has been separately represented and had actively participated in every phase of the litigation of the four related actions for over one year before the Opinion was issued.

On July 16, 2014, counsel for Ms. Shawe entered an appearance in C.A. No. 9700-CB. Since that date, according to the Court's docket, it appears that Ms. Shawe's separate counsel participated in every telephonic and in-person hearing held in any of the four related actions, including the two in which she was not named as a party (C.A. Nos. 9661-CB and 9686-CB).[1] At the conclusion of the hearing held on November 18, 2014,

---

[1] The hearings in which Ms. Shawe participated and the civil action(s) to which each hearing was relevant according to the transcripts on file are as follows: September 5, 2014 (9686); September 18, 2014 (9700); September 26, 2014 (9661, 9686, 9700, 10141); November 18, 2014 (9661, 9686, 9700, 10141); December 11, 2014 (9700); January 6, 2015 (9661, 9686, 9700); January 21, 2015 (9700); February 2, 2015 (9700); February 11, 2015 (9661, 9686, 9700, 10141); February 19, 2015 (9700); February 20, 2015 (9661, 9686, 9700, 10141); March 9, 2015 (9661, 9686, 9700, 10449); April 28, 2015 (9661, 9686, 9700, 10449); June 3, 2015 (9661, 9686, 9700, 10449). As explained in the Opinion, C.A. No. 10141-CB was the precursor to the stockholder deadlock claim ultimately litigated in C.A. No. 10449-CB.

I ordered that the three then-pending cases (C.A. Nos. 9661-CB, 9686-CB, and 9700-CB) be scheduled for an expedited trial on a consolidated basis. Discovery of the actions was coordinated, and Ms. Shawe was deposed. Ms. Shawe then participated in the trial, which was held over six days from February 23, 2015 to March 3, 2015.

On August 24, 2015, Ms. Shawe filed a motion under Court of Chancery Rule 24(b) to intervene in C.A. No. 9686-CB for the purpose of filing a motion under Rule 59(e) to alter or amend the Dismissal Order. Noting that certain derivative claims Shawe asserted in C.A. No. 9686-CB were dismissed with prejudice based on application of the doctrines of unclean hands and acquiescence, Ms. Shawe argues that the "Dismissal Order should be altered or amended to prevent manifest injustice that would occur if Ms. Shawe were barred from asserting derivative claims because of equitable defenses based on Mr. Shawe's conduct."[2]

### 2. Analysis

"[A]s a prerequisite to intervening under either [Court of Chancery] Rule 24(a) or (b), the proposed intervenor must make timely application."[3] This requirement appears expressly in Rule 24(b):

---

[2] Ms. Shawe's Mot. to Intervene, 5.

[3] *Wion v. National Recreation Products, Inc.*, 1980 WL 268059, at *2 (Del. Ch. Dec. 5, 1980).

> *Upon timely application* anyone may be permitted to intervene in an action: (1) When a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Ch. Ct. R. 24(b) (emphasis added). Although Delaware precedent on the meaning of "timely application" is limited, substantial case law examines the analogous requirement (*i.e.*, the need to file a "timely motion") in the Rule 24 of the Federal Rules of Civil Procedure.[4]

Courts applying Federal Rule 24 have identified four factors to consider in determining whether an application for intervention is timely: (1) the length of time the movant knew or reasonably should have known of her interest before she petitioned to intervene; (2) prejudice to the existing parties due to failure to petition for intervention earlier; (3) the prejudice the movant would suffer if not allowed to intervene; and (4) the existence of unusual circumstances weighing either for or against intervention.[5] These

---

[4] *See, e.g.*, *Plummer v. Sherman*, 861 A.2d 1238, 1242 (Del. 2004) (". . . the Delaware Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure. We therefore find certain federal cases appropriate for determining the proper interpretation of the Delaware Rules of Civil Procedure.").

[5] *See Culbreath v. Dukakis*, 630 F.2d 15, 20 (1st Cir. 1980) (citing *Stallworth v. Monsanto Corp.*, 558 F.2d 257, 264 (5th Cir. 1977)); *U.S. v. State of N.Y.*, 820 F.2d 554, 557 (2d Cir. 1987); *South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985). Other circuits have applied a three-factor test: (1) how far the proceedings have gone when the movant seeks to intervene, (2) prejudice which resultant delay might cause to other parties, and (3) the reason for the delay. *See, e.g.*, *Com. of Pa. v. Rizzo*, 530 F.2d 501, 506 (3d Cir.

four factors are not a bright-line test; instead they are a means of determining timeliness under the totality of the circumstances of a given case.[6] I examine each factor below.

The first factor considers when a movant knew or reasonably should have known about the need to intervene.[7] In this case, that moment was when Ms. Shawe knew or should have known that Shawe's assertion of the derivative claims were subject to one or more affirmative defenses unique to him that might not apply to Ms. Shawe. Here, the record reflects that Elting raised the affirmative defense of unclean hands against Shawe in C.A. No. 9686-CB as early as October 10, 2014, when opposing Shawe's motion for a preliminary injunction and temporary restraining order.[8] About two months later, on December 15, 2014, Elting filed an answer in which she specifically asserted that the derivative claims "are barred by the doctrines of acquiescence, laches, unclean hands,

---

1976). The two sets of guidelines are substantively similar, and having also considered the lack of any persuasive reason for Ms. Shawe's delay, my analysis would be the same under either formulation.

[6] *Culbreath*, 630 F.2d at 20 (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973).

[7] *See, e.g.*, *Hill v. Western Elec. Co., Inc.*, 672 F.2d 381, 386 (4th Cir. 1982) (cert. denied, 45 U.S. 981) ("the critical issue with respect to timeliness is whether the proposed intervenor moved to intervene as soon as it became clear . . . that the interests of the unnamed class members would no longer be protected by the named class representatives.") (internal quotation marks omitted).

[8] Elting's Opp. Br. 46, Oct. 10, 2014 (Docket Item ("D.I.") no. 9686-102).

ratification, waiver, and/or estoppel."[9]   Thus, the record shows that Ms. Shawe knew or, at a minimum, reasonably should have known, about the equitable defenses applicable to Shawe long before trial (and before discovery had commenced in any meaningful sense) and yet, inexplicably, waited for more than eight-to-ten months—until after the claims had been fully adjudicated—to file a motion to intervene.

The second factor considers whether permitting Ms. Shawe to intervene now would cause prejudice to any of the existing parties to the litigation.   Allowing intervention at this late stage plainly would cause substantial prejudice to Elting because it would expose her to having to relitigate claims over which she already has expended significant resources, and because she may have pursued a different litigation strategy if Ms. Shawe had intervened earlier.  Elting, for example, may have allocated more of her trial time or devoted more of her post-trial briefing to defending against attacks that were made against specific transactions rather than relying on global defenses.

The third factor is the prejudice to the movant if not allowed to intervene.  Ms. Shawe argues that because Shawe was not properly able to represent her interests, it is appropriate to dismiss the derivative claims with prejudice only as to him, "so that the dismissal does not have preclusive effect on other stockholders."[10]  To be clear, Shawe

---

[9] Elting's Ans. ¶ 129, Dec. 15, 2014 (D.I. no. 9686-147).

[10] Ms. Shawe's Mot. to Intervene, 7.  For support, Ms. Shawe cites *South v. Baker,* 62 A.3d 1, 26 (Del. Ch. 2012), where this Court granted a motion to dismiss derivative

and Elting account for 99% of the Company's shares. The only other stockholder conceivably in the mix is Ms. Shawe. Although denial of the opportunity to intervene would prejudice Ms. Shawe's ability to press a Rule 59(e) motion in the hopes of preserving her ability to relitigate the derivative claims, such prejudice should be considered within the practical reality that stockholders holding 99% of the Company's shares already have fully litigated those claims.

The final factor considers any unusual circumstances weighing for or against intervention. Two circumstances bear mention. First, as mentioned above, this motion was filed long after trial and after the entry of judgment, at the proverbial last minute. Courts understandably have expressed considerable reluctance to allow intervention after an action has gone to judgment.[11] Indeed, Court of Chancery Rule 24, which requires the movant to submit a pleading along with the motion, contemplates that intervention will

claims asserted on behalf of Hecla Mining Company with prejudice only as to two representative plaintiffs who had been found to be inadequate. *South* is inapposite. It was decided at the pleadings stage and, unlike Ms. Shawe here, the other stockholders of Hecla did not participate in the litigation in which the derivative claims were dismissed and had no apparent reason to know about the inadequacy of the representative plaintiffs until the motion to dismiss was decided.

[11] *See, e.g.*, *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970) ("an attempt to intervene after final judgment is ordinarily looked upon with a jaundiced eye. The rationale which seems to underlie this general principle . . . is the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the court."). *See also* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Practice and Procedure* § 1916, at 561–562 (3d Ed. 2007).

occur before trial in a manner that would not "unduly delay or prejudice the adjudication of the rights of the original parties."[12] Second, Ms. Shawe offers no legitimate explanation for her decision to intervene now, rather than much earlier, when she knew or certainly should have known about the assertion of equitable defenses against her son. In cases where litigation already has progressed substantially, with substantive and procedural issues settled by the time of a motion for intervention, courts have rejected motions to intervene where litigants failed to adequately explain the reasons for their delay.[13]

Weighing each of the factors discussed above, the totality of the circumstances weighs decisively against permitting intervention at this late date. In short, I am hard-pressed to see any equity to affording Ms. Shawe the opportunity to seek a "do-over" at the last minute, much less how any manifest injustice would result from depriving her of the chance to do so, where enormous private and judicial resources have been expended to resolve the derivative claims in a case in which holders of 99% of the Company's stock fully litigated the issues and Ms. Shawe was an active participant.

\* \* \* \* \*

---

[12] Ch. Ct. R. 24(b)–(c).

[13] *See, e.g.*, *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) ("Even more damaging to [intervenor's] motion than the twenty-seven month delay itself, however, is its failure adequately to explain . . . the *reason* for its delay."); *Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999).

For the foregoing reasons, Ms. Shawe's motion to intervene for the purpose of filing a Rule 59(e) motion to alter or amend the Dismissal Order is denied.

IT IS SO ORDERED.

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gp