NEW YORK CHINESE TV PROGRAMS, INC., Plaintiff,

v.

U.E. ENTERPRISES, INC., Flushing Star, Inc., Chan's Video & Trading, Inc., Gong Pictures, Inc., Queens Video Ltd., Dang's Video, Inc., Po Yuen and John Does Nos. 1–50, Defendants.

v.

David DOO, Tehwa Mu and Steve Cheng, Applicant–Intervenors.

No. 88 Civ. 4170 (RWS).

United States District Court, S.D. New York.

Feb. 24, 1994.

Howard A. Wintner, New York City, for plaintiff.

Gleit & Fair, New York City, for defendants; by Stephen P. Gleit, of counsel.

Richard E. Bennett, New York City, for applicants-intervenors.

## OPINION

SWEET, District Judge.

Applicant–Intervenors David Doo, Tehwa Mu and Steven Cheng (collectively, the "Applicants") appeal from the order of Magistrate Judge Kathleen Roberts denying their motion to intervene, pursuant to Rule 24, Fed.R.Civ.Pro., in this action. For the reasons set forth below, the Report and Recommendation of the Magistrate Judge is affirmed.

### Parties

Plaintiff New York Chinese TV Programs Inc. ("New York Chinese") is a New York Corporation, originally owned by five shareholders each of whom owned 20% of its shares. New York Chinese distributes Mandarin language videotapes to its authorized sub-licensee retail outlets for rental purposes.

The Applicants, David Doo, Tehwa Mu and Steve Cheng are former shareholders and officers of New York Chinese, in which they collectively used to own a majority interest of

60%. They sold their shares to Howard and Li W. Shih on November 13, 1990.

### Prior Proceedings and Facts

The facts and prior proceedings in this action are fully set forth in the following cited opinions, familiarity with which is assumed. *See New York Chinese TV Programs, Inc. v. U.E. Enters., Inc.,* No. 88 Civ. 4170, 1989 WL 22442, 1989 U.S.Dist. LEXIS 8075 (S.D.N.Y. Mar. 8, 1989) (*"New York Chinese I"*); *New York Chinese TV Programs, Inc. v. U.E. Enters., Inc.,* No. 89 Civ. 6028, 1991 WL 113283, 1991 U.S.Dist. LEXIS 8075 (S.D.N.Y. June 14, 1991) (*"New York Chinese II"*); *New York Chinese TV Programs v. U.E. Enters.,* 954 F.2d 847 (2d Cir.) (*"New York Chinese III"*), *cert. denied,* — U.S. ——, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992); *New York Chinese TV Programs, Inc. v. U.E. Enters., Inc.,* No. 89 Civ. 6082 (S.D.N.Y. June 26, 1992) (*"New York Chinese IV"*); *New York Chinese TV Programs v. U.E. Enters.,* 996 F.2d 21 (2d Cir.1993) (*"New York Chinese V"*). Only those facts relevant to the instant motion are presented below.

Plaintiff New York Chinese initiated this action in June 1988, when it filed an order to show cause alleging copyright infringement by numerous defendants, including U.E. Enterprises, Inc. of Mandrin-language television programs produced by three television stations in Taiwan.

The parties consented to a referral of this action to Magistrate Judge Kathleen A. Roberts, pursuant to 28 U.S.C. § 636(c)(1), which provides that Magistrates may conduct proceedings "upon consent of the parties." A bench trial before Magistrate Judge Roberts on the sole issue of Defendants' liability for copyright infringement yielded a decision for New York Chinese on March 8, 1989.

After the liability trial, but before the trial on damages, Howard and Li Shih entered into a Stock Sale Agreement (the "Agree-

ment") to purchase 60 percent of the stock in New York Chinese from the three Applicants. There is some dispute as to the parameters of this agreement, but the parties do agree that the Applicants retained their right to share in any damages to be awarded in the copyright action.

On July 5, 1991, Magistrate Judge Roberts entered a judgment of damages in the amount of $762,500, and on September 4, 1991, she assessed attorney fees and expenses in the sum of $417,681.88.[1]

On September 12, 1991, New York Chinese and Defendants signed a settlement agreement, providing damages in the amount of $700,000, which was "so ordered" by Magistrate Judge Roberts on September 26, 1991.

The Applicants contest this settlement. They contend that Plaintiff settled the case without their approval in violation of the Agreement with Howard and Li Shih and, furthermore, the settlement should be rejected because it calls for the payment of legal fees to New York Chinese's attorney at the expense of damages, which were owed to the Intervenors by virtue of the Agreement. For these reasons, Applicants seek an order vacating the settlement order of September 26, 1991, and reinstating the original judgment of liability and damages against the Defendants; an award of 60% share of the damages assessed on July 3, 1991; and an award of all attorney fees, costs, and disbursements assessed on September 4, 1991.

Applicants first moved the Court of Appeals for formal leave to intervene as of right in the lawsuit on October 26, 1991, four months after Final Judgment had been entered. At that time, the validity of the copyrights which Chinese TV Programs had sued upon was on appeal. *See New York Chinese III,* 954 F.2d 847 (2d Cir.1992). The Court of Appeals denied the motion to intervene without prejudice and granted leave to renew before the district court or the magistrate.

---

1. Magistrate Judge Roberts issued an Opinion and Order on June 14, 1991 finding (i) the individual Defendants personally liable for the Corporate Defendants' copyright infringement; and (ii) the Defendants' infringement to be wilful within the meaning of the Copyright Laws. A Final Judgment was entered on July 5, 1991 by Magistrate Judge Roberts awarding statutory damages to Plaintiffs in the amount of $762,500 or, in the alternative, actual damages and Defendants' profits of $718,707.85 and Plaintiff attorneys' fees and costs, pursuant to 17 U.S.C. § 505, in the amount of approximately $420,000.

The Applicants brought their motion to this Court which referred it, over objection, back to Magistrate Judge Roberts who denied the request for intervention as untimely. *See New York Chinese IV,* No. 89 Civ. 6028 (S.D.N.Y. June 26, 1992).

The Applicants then appealed Magistrate Judge Robert's denial of intervention in *New York Chinese IV* to this Court which determined it did not have jurisdiction and that an appeal from the Magistrate Judge's order could only be made directly to the Second Circuit. The Second Circuit disagreed. In *New York Chinese V,* the Court of Appeals held that absent the Applicants' consent, Magistrate Judge Roberts was "not authorized to enter a final order denying intervention; her decision on the motion is deemed to be a report and recommendation to the district judge" and "[c]onsequently, the district court did have jurisdiction to hear the 'intervenors'' objections to the magistrate judge's determinations." *New York Chinese V,* 996 F.2d at 25. Accordingly, the Second Circuit directed this Court to "review *de novo* the recommendation" of Magistrate Judge Roberts. *Id.*

### Discussion

#### I. *Legal Standards of Rule 24(a)*

Rule 24(a) of the Federal Rules of Civil Procedure, provides for intervention as of right in the following circumstances:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relative to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In this Circuit intervention as of right is permitted only if an applicant has fulfilled all of the following requirements: (1) filed a timely application; (2) shown an interest in the action; (3) demonstrated that such an interest would be impaired by the disposition of the action; and (4) shown that the interest is not adequately protected by existing parties to the action.[2] *See New York News, Inc. v. Kheel,* 972 F.2d 482, 485 (2d Cir.1992) (denying intervention as of right because applicant failed to show a "protectable" interest in the action). Failure to satisfy any one of these elements constitutes sufficient grounds to deny an intervention application. *United States v. New York,* 820 F.2d 554, 556 (2d Cir.1987). Under these criteria, the Court of Appeals has concluded that a denial of intervention by a trial court may only be reviewed under the "abuse of discretion" standard. *Farmland Dairies v. Com'r of N.Y. Dep't of Agr.,* 847 F.2d 1038, 1044 (2d Cir.1988) ("*Farmland Dairies*").

The timing of applications to intervene is of special interest to the courts. The Second Circuit, for example, disfavors post-judgment intervention "because it fosters delay and prejudice to existing parties." *See Farmland Dairies,* 847 F.2d at 1044. The Court of Appeals has further held that the "determination of the timeliness of an application to intervene is committed to the sound discretion of the trial court, and we therefore review only as to abuse of that discretion." *Farmland Dairies,* 847 F.2d 1038, 1044 (2d Cir.1988) (citing *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973)). In *United States v. Yonkers Bd. of Educ.,* 801 F.2d 593, 596 (2d Cir.1986), the Court held that a motion to intervene to challenge an order was tardy after a three and a half month delay.[3] The Court of Appeals included in its timeliness calculus the three month period prior to entry of the order, on the theory that the applicants were on notice that their rights could be affected

---

2. The law of the Second Circuit, unlike the cases cited by Applicants from the Sixth, Eighth and Seventh Circuits, strictly interprets intervention as of right. *See Farmland Dairies v. Com'r of N.Y. Dep't of Agr.,* 847 F.2d 1038, 1043–45 (2d Cir.1988) (summarizing Second Circuit precedents concerning intervention as of right).

3. In *Yonkers Bd. of Educ.,* the Applicants moved to intervene 12 days after the order was entered, in this case Applicants waited nearly four months after the Judgment to request leave to intervene and six months to actually move to intervene.

by the order which the district court might issue. 801 F.2d at 596–97.[4]

## II. *Magistrate Judge Robert's Determination that Applicants' Motion is Untimely Was Correct*

Under the *de novo* standard of review, the findings of Magistrate Judge Roberts, denying the Applicants' motion to intervene after settlement or entry of judgment as untimely, must be affirmed.

■ Upon *de novo* review, this Court concurs with the following factual determinations made by Magistrate Judge Roberts. First, the Agreement was consummated on November 13, 1990 at which point the Applicants knew or should have known that their alleged interest in the litigation might not be adequately protected by the Shihs, since the Shihs would not share in any recovery or liability for attorney's fees. In short, in exchange for the sale of the stock, the Applicants appear to have bargained away their future rights to "control" this litigation. Second, the Applicants at some point in late 1990 or early 1991 became aware of their loss of control when they retained separate counsel to protect their alleged interests.[5] Third, the ensuing correspondence presented with this motion, indicates that on April 19, 1991, the Applicants were formally placed on notice that Plaintiff challenged their alleged "rights to control the litigation." *See* Pl.'s Resp. Ex. 2.

Therefore, as a factual matter, the Applicants were aware of, and actively pursuing, their alleged rights to "control" this action no later than April 19, 1991. Yet the Applicants made no effort to seek leave to intervene until October 26, 1991,[6] after a settlement was reached and a final judgment had been entered by Magistrate Judge Roberts. Based upon the foregoing facts, Magistrate Judge Roberts correctly determined Applicants' motion for intervention to be untimely.

As noted by Magistrate Roberts, denial of this application does not leave the Applicants without legal recourse. *New York Chinese IV,* No. 89 Civ. 6028, at 5, n. 2. Applicants have the alternative remedy of seeking damages in state court on their alleged breach of contract claims against the Shihs. Indeed, the fact that alternative remedies exist is another commonly accepted basis for denying intervention as of right.

> There are, of course, also cases in which the courts have found that neither practically nor legally would the applicant be impaired or impeded in seeking to protect his interest by a disposition of the action and they have accordingly denied intervention of right for failure to satisfied this requirement. This has occurred, for example, when the court finds that the would-be intervenor could protect its interests in a separate action; the practical disadvantage of filing a separate suit and perhaps duplicating some of the efforts in the ongoing action are not sufficient to meet the criteria of the rule.

7C Charles A. Wright & Arthur R. Miller Federal Practice and Procedure § 1908 at 305–12 (1986) (citing, among other cases, *United States v. New York,* 99 F.R.D. 130, 133 (S.D.N.Y.1983)).

■ Further, it must be emphasized that the Applicants have put forward no "'exceptional circumstances' warranting departure from the general rule that intervention should be denied where an action has been

---

4. Applicants cite a thirty year old Fifth Circuit case for the proposition that the "current view of the courts" allows intervention as of right unless the parties oppose intervention will be prejudiced. Applicant–Intervenor Br. at 9–10 (citing *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1073 (5th Cir.1970)) (citing Note, The Requirement of Timeliness under Rule 24 of the Federal Rules of Civil Procedure, 37 Va.L.Rev. 863, 867 (1951)). However, this proposition may not be reconciled with the evolution of Second Circuit case law.

5. The Applicants have had four attorneys represent them on this issue. They discharged their first attorney, Mr. Quigley, on May 9, 1991 because he allegedly did not represent their interests. Quigley was replaced by Mr. Stern, who was discharged on or about September 17, 1991. Apparently, the Applicants and Stern are in litigation over their failure to pay his fees and their allegations that he, too, did not represent their interests. The Applicants then retained Mr. Moncrief and now Mr. Bennett.

6. On May 9, 1991, counsel for the Applicants informed the Court by letter of their asserted interest in the lawsuit and claim to the proceeds, but made no formal motion at that time.

settled or final judgment has been entered." *New York Chinese IV,* No. 89 Civ. 6028, at 4–5 (S.D.N.Y. June 26, 1992). As set forth earlier, the legal standards are well established in this Circuit that in cases, as here, where an action has been settled or final judgment has been entered, a motion to intervene will be denied, save exceptional circumstances. *See Farmland Dairies,* 847 F.2d at 1044.

In this case, the former shareholders have waited more than a year after the Agreement was consummated to assert their "rights" to intervene in this lawsuit, six months after they were notified by Plaintiff's counsel of its opposition, and several months after a final judgment had been entered and a settlement agreement reached. Untimely disruptions of a final judgment and settlement are inappropriate, especially if the Applicants have another remedy available to redress their alleged wrongs—that is to say, a state court action for money damages alleging a breach of the Agreement. Therefore, Applicants' motion to intervene as of right is denied as it is untimely and fails to set forth exceptional circumstances justifying its delay.

*Conclusion*

For the reasons stated above, Applicants' motion to intervene as of right, pursuant to Fed.R.Civ.P. 24(a), in this lawsuit is untimely and is denied.

It is so ordered.