# United States Court of Appeals
## For the First Circuit

No. 08-2542

R&G MORTGAGE CORPORATION AND
R-G PREMIER BANK OF PUERTO RICO,

Plaintiffs, Appellees,

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION,

Defendant, Appellee.

_____

DORAL BANK,

Putative Intervenor, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

_____

Before

Howard, Ripple[*] and Selya, Circuit Judges.

_____

Nelson N. Cordova-Morales, with whom Harold D. Vicente and
Vicente & Cuebas were on brief, for putative intervenor.
Raul M. Arias, with whom John Oberdorfer, Samantha R. Petrich,
Patton Boggs LLP, Francisco G. Bruno, Irma M. Léon González, and
McConnell Valdes were on brief, for plaintiffs.
William C. Ballaine, with whom Mark S. Landman, Landman Corsi
Ballaine & Ford, Ricardo F. Casellas, Casellas Alcover & Burgos,
P.S.C., and Kenton W. Hambrick were on brief, for defendant.

_____

[*] Of the Seventh Circuit, sitting by designation.

October 1, 2009

**SELYA**, **Circuit Judge**. This appeal directly challenges the denial of an attempt at post-settlement intervention and indirectly challenges the propriety of a sealing order.[1] The stage is easily set. After the settlement of a sealed lawsuit to which it was not a party, Doral Bank (Doral) sought to intervene. The district court denied the motion as untimely and refused to conduct a hearing anent the propriety of the sealing order. The court later declined to reconsider its order.

Doral now appeals, asseverating that it should have been permitted (i) to intervene as of right or (ii) to intervene permissively to challenge the sealing order. Discerning no abuse of discretion in the district court's rulings, we affirm.

## I. BACKGROUND

We set forth the largely undisputed facts as found by the district court, consistent with record support.

This case rises from the ashes of the once vibrant market in mortgage-backed securities. The plaintiff is a mortgage lending and servicing conglomerate.[2] The defendant, Federal Home Loan

---

[1] We use the term "post-settlement" in lieu of the more familiar term "post-judgment" because the district court approved the final settlement agreement before the putative intervenor moved for leave to intervene, but did not enter judgment on the docket until several days later. Inasmuch as the parties have attached no significance to this chronological curiosity, we make no further mention of it.

[2] Although both R&G Mortgage Corp. and R-G Premier Bank of Puerto Rico are plaintiffs, we refer to them collectively as R&G.

Mortgage Corp. (Freddie Mac), is (or, more accurately, was in earlier halcyon days) a prodigious purchaser of mortgages needed to feed its appetite for a steady stream of offerings of mortgage-backed securities. Freddie Mac does not itself collect and process loan payments or work out defaults on the mortgage loans that it buys. Instead, it outsources those tasks to qualified servicers.

R&G and Freddie Mac had a business relationship reaching back over three decades. In the ordinary course of that relationship, Freddie Mac contracted with R&G to service a substantial portfolio of Puerto Rican mortgages. In 2008, however, the relationship soured.

On July 11, 2008,[3] Freddie Mac informed R&G that it was being terminated as a qualified servicer (and, thus, could no longer service Freddie Mac's loan portfolio). To pick up the slack, Freddie Mac contracted on the same date with Doral to take over the servicing of the loans on an interim basis. Doral noted this arrangement in a so-called 8-K report that it filed with the Securities and Exchange Commission (SEC).

On July 14, R&G brought suit against Freddie Mac in the United States District Court for the District of Puerto Rico. Its complaint alleged breach of contract and prayed for a declaratory judgment to vindicate its status as a qualified servicer of Freddie Mac mortgage loans (at least until a contractual appeals process

---

[3] All dates are in 2008 unless otherwise indicated.

-4-

had run its course), along with injunctive relief designed to keep the Freddie Mac mortgage portfolio under R&G's control pendente lite. Concerned that its confidential business information otherwise would wind up in the public domain, R&G asked that the case be placed under seal.

On the same day that the action was commenced, the district court issued an ex parte temporary restraining order (TRO) that, among other things, blocked both the termination of R&G's status as a qualified servicer and the planned transfer of the servicing rights to Doral. The court simultaneously granted R&G's ancillary request, placing the docket and all papers in the case under seal.

Doral received notice on several occasions that this litigation impeded its interim servicing contract. We cite some examples.

- Freddie Mac's associate general counsel initiated a conference call with Doral's president and in-house lawyer on July 15, during which the caller informed the Doral hierarchs that the TRO had issued and that it blocked Freddie Mac from shifting servicing of the portfolio to Doral.

- On July 16, R&G filed an 8-K report stating that R&G had obtained the TRO and describing its effect. That SEC report was a matter of public record.

- On the following day, Freddie Mac sent a letter to Doral formally notifying Doral that the TRO, issued by the federal court in Puerto Rico, put the planned transfer of the mortgage portfolio "on hold."

• On July 18, R&G's general counsel wrote to his counterpart at Doral, by mail and e-mail. That communique notified Doral of the issuance of the TRO and admonished that the TRO "precluded" the implementation of Doral's agreement with Freddie Mac. Although a glitch in the address caused a delay in delivery of the hard copy of this letter, Doral's general counsel acknowledged that he received it no later than August 11. In any event, Doral never denied receiving the e-mail, so it presumably received that version on the day of transmission.

• Doral responded to these developments on August 14. On that date, it wrote to R&G, advising that it would move to intervene in the pending action unless it was given a copy of the TRO. R&G refused this ultimatum via e-mail on the following day, noting that all the paperwork in the case was under seal. The e-mail advised that Doral's interim servicing agreement was not directly at issue in the litigation but that, insofar as that agreement pertained to R&G's portfolio of Freddie Mac mortgages, the TRO rendered Doral "unable to perform."

At this point, we return to the travel of the case. Rather than holding a hearing on preliminary injunction, see Fed. R. Civ. P. 65(b)(2)-(3), the district court extended the TRO several times by consent while settlement discussions percolated between R&G and Freddie Mac. On September 18, those parties jointly moved under seal for court approval of a negotiated settlement that allowed R&G to continue to service Freddie Mac mortgages until it could sell its servicing rights to a qualified third party.

On the same day, Freddie Mac advised Doral of the settlement. It offered to provide a copy of the sealed settlement agreement, contingent upon Doral's execution of a confidentiality agreement. Although Freddie Mac and Doral subsequently agreed to the terms of the confidentiality agreement, Doral never signed it.

The district court approved the settlement on September 25. A week later (on October 2), Doral moved to intervene either as of right or permissively. Invoking our decision in Banco Popular v. Greenblatt, 964 F.2d 1227 (1st Cir. 1992), the district court denied the motion as untimely. The court later eschewed reconsideration. This seasonable appeal followed. We have jurisdiction because an order denying a motion to intervene is immediately appealable. Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir. 1999).

## II. DISCUSSION

We first examine Doral's contention that it should have been granted leave to intervene as of right. We then turn to its alternative contention that it should have been granted leave to intervene permissively.

### A. Intervention as of Right.

To succeed on a motion to intervene as of right, a putative intervenor must establish (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action;

-7-

(iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party. See Negrón-Almeda v. Santiago, 528 F.3d 15, 22 (1st Cir. 2008); B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 544-45 (1st Cir. 2006); see also Fed. R. Civ. P. 24(a). The movant must fulfill each of these preconditions. "The failure to satisfy any one of them dooms intervention." Patch, 136 F.3d at 204.

The court below recognized that when intervention is at issue, timeliness is the "prevenient question." Greenblatt, 964 F.2d at 1230 (explaining that "timeliness stands as a sentinel at the gates whenever intervention is requested and opposed"). Consequently, the court started with the timeliness requirement. We emulate that approach.

The timeliness inquiry is inherently fact-sensitive and depends on the totality of the circumstances. Id. at 1230-31. In evaluating that mosaic, the status of the litigation at the time of the request for intervention is "highly relevant." Id. at 1231. As a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies. Id.

As a general matter, the case law reflects four factors that inform the timeliness inquiry: (i) the length of time that the putative intervenor knew or reasonably should have known that his

interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention. Id. Each of these factors must be appraised in light of the posture of the case at the time the motion is made. Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008). Under this approach, motions to intervene that will have the effect of reopening settled cases are regarded with particular skepticism because such motions tend to prejudice the rights of the settling parties. See, e.g., In re Lease Oil Antitrust Litig., 570 F.3d 244, 250 (5th Cir. 2009); Heartwood, Inc. v. U.S. Forest Serv., 316 F.3d 694, 700-01 (7th Cir. 2003); Greenblatt, 964 F.2d at 1231.

We review the grant or denial of a motion to intervene for abuse of discretion. Negrón-Almeda, 528 F.3d at 21. We caution, however, that the abuse of discretion standard is not one-dimensional. Within that rubric, a material error of law constitutes a per se abuse of discretion, id. at 22, and a trial court's answers to abstract legal questions are reviewed de novo, Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 109 (1st Cir. 1999). Moreover, a trial court's subsidiary findings as to raw facts are reviewed for clear error. Ewers v. Heron, 419 F.3d 1, 3 (1st Cir. 2005).

The Civil Rules contemplate two types of motions to intervene: intervention as of right, Fed. R. Civ. P. 24(a), and permissive intervention, Fed. R. Civ. P. 24(b). The differences are significant. We mention two particulars. First, in the case of a motion to intervene as of right, the district court's discretion is somewhat more constrained than in the case of a motion for permissive intervention. See Patch, 136 F.3d at 204. Second, the timeliness requirement is often applied less strictly with respect to intervention as of right. See, e.g., Navieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d 304, 320 (1st Cir. 1997). But we hasten to add a caveat: even in the case of a motion to intervene as of right, the district court's discretion is appreciable, and the timeliness requirement retains considerable bite.

In this instance, Doral claims that it was entitled to intervene as of right because its contractual rights under the interim servicing agreement were directly impacted by R&G's suit and that, in its absence, no other party would protect its interests. The lower court did not reach the merits of these claims. Rather, it concluded as a threshold matter that Doral could not vault the timeliness hurdle and, accordingly, denied the motion. We examine that rationale.

A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive notice that a

pending case threatens to jeopardize his rights. Greenblatt, 964 F.2d at 1231; Caterino v. Barry, 922 F.2d 37, 40-41 (1st Cir. 1990). Perfect knowledge of the particulars of the pending litigation is not essential to start the clock running; knowledge of a measurable risk to one's rights is enough. See Greenblatt, 964 F.2d at 1231; Culbreath v. Dukakis, 630 F.2d 15, 20-21 (1st Cir. 1980).

In conducting a timeliness inquiry, there are no ironclad rules about just how celeritously, in terms of days or months, a person must move to protect himself after he has acquired the requisite quantum of knowledge. The passage of time is measured in relative, not absolute, terms. Thus, what may constitute reasonably prompt action in one situation may be unreasonably dilatory in another. Compare, e.g., Geiger, 521 F.3d at 65 (nine-month delay in moving to intervene reasonable in particular circumstances), with, e.g., Greenblatt, 964 F.2d at 1231-32 (three-month delay unreasonable in a different set of circumstances). In the last analysis, the timeliness inquiry centers on how diligently the putative intervenor has acted once he has received actual or constructive notice of the impending threat.

The district court supportably found that Doral learned about the suit and the consequent jeopardy to its servicing rights during the July 15 conference call. Doral received confirmation

that the TRO was in place in the form of an e-mail from R&G, which was transmitted on July 18. That communication made it pellucid that the TRO adversely affected Doral's contractual rights. Doral obviously appreciated that fact; on August 14 — armed with essentially the same information that it had on July 18 — Doral threatened to intervene in the pending action in order to protect its rights. But despite this bluster, Doral inexplicably waited until October 2 before moving to intervene.

The district court determined that a delay of two and one-half months after Doral knew of the incipient problem (that is, a delay from July 18 to October 2) was inexcusable. That determination was well within the realm of the court's discretion. As struthious as Doral may have been, it is simply implausible that Doral did not know by mid-July that its rights were imperilled.[4] Doral's failure to act until October amply supported the district court's ruling that its motion to intervene was unreasonably late. See Greenblatt, 964 F.2d at 1231-32; Caterino, 922 F.2d at 40-41; cf. United States v. Taylor, 54 F.3d 967, 972 (1st Cir. 1995) (explaining that, as a general proposition, "the

---

[4] Even if we were to assume that August 11, rather than July 18, was the date on which Doral's knowledge crystallized, that assumption would not assist Doral. The district court explicitly and supportably found that, if August 11 was the date on which Doral acquired knowledge of a measurable risk, it nonetheless failed to act in a timeous fashion.

law ministers to the vigilant, not to those who sleep upon perceptible rights").

The district court did not directly address the other elements of the timeliness inquiry, but those elements weaken Doral's position even further. The second and third elements, which together involve the balance of harms, cut sharply against Doral. By the time that Doral moved to intervene, the original parties had forged a settlement of their dispute. Because Doral's proposed intervention was aimed at disrupting that settlement, the harm that intervention would have worked to the original parties was manifest.[5] See Greenblatt, 964 F.2d at 1232. One of the core purposes of the timeliness requirement is to prevent disruptive, late-stage intervention that could have been avoided by the exercise of reasonable diligence. See United Nuclear Corp. v. Cannon, 696 F.2d 141, 143 (1st Cir. 1982); see also Heartwood, 316 F.3d at 701 (stating that attempted post-settlement intervention "strongly suggests" a tactical attempt to thwart the settlement rather than to participate in the litigation).

Doral argues that both R&G and Freddie Mac knew of its potential claim and that knowledge of another party's potential claim vitiates any prejudice caused by the latter's tardiness in

---

[5] The district court apparently recognized this fact. Its order denying intervention stated that Doral should not be allowed to intervene at "a crucial and decisive stage" following the "months of time and effort" leading to the settlement.

-13-

seeking intervention.  That overstates the point.  Acting in the face of knowledge about a potential claim may make it more difficult to show prejudice, but it does not excuse the claimant from its obligation to proceed with reasonable dispatch to protect its interests.

Doral's claim of prejudice arising out of the denial of its motion to intervene is unconvincing.  It asserts that the settlement "substantially affects" its ability to obtain specific performance as a remedy for Freddie Mac's alleged breach of the interim servicing agreement.[6]  Appellant's Br. at 10.  But any disadvantage at which Doral now finds itself amounts to a self-imposed wound.  Had Doral acted with due diligence in pursuing intervention, the perceived hardship would not exist.  For obvious reasons, a preventable hardship weighs less heavily in the balance of harms.  See Larson v. JPMorgan Chase & Co., 530 F.3d 578, 583-84 (7th Cir. 2009); United States v. British Am. Tobacco Austl. Servs., Ltd., 437 F.3d 1235, 1239 (D.C. Cir. 2006).

In any event, the denial of intervention will not cause Doral significant prejudice.  Doral still has an adequate remedy. It may bring a separate action against R&G and/or Freddie Mac for money damages.  See, e.g., New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (noting

---

[6] The record contains evidence that, in late 2008, R&G completed the sale of its servicing rights to a third party.

-14-

availability of damages for tortious interference with contract under local law); Soggs v. Crocco, 668 N.Y.S.2d 796, 797-98 (N.Y. App. Div. 1998) (affirming damages award in lieu of specific performance when performance had become impossible). The availability of an adequate alternative remedy softens any plausible claim of prejudice. N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc., 153 F.R.D. 69, 72 (S.D.N.Y. 1994) (explaining that the existence of alternative remedies "is another commonly accepted basis for denying intervention").

The fourth element of the timeliness inquiry requires an assessment of whether any special circumstances exist. Greenblatt, 964 F.2d at 1231. There are none here, save that the posture of the case colors the circumstances. Requests for post-settlement intervention are rarely granted. See Heartwood, 316 F.3d at 701; cf. Chase Manhattan Bank v. Corporacion Hotelera de P.R., 516 F.2d 1047, 1050 (1st Cir. 1975) (describing proposed post-judgment intervention as "unusual").

In this case, the four timeliness factors all point the same way. Nevertheless, Doral attempts to blunt their combined force by arguing that it was impossible to intervene more expeditiously because it did not know the civil action number, the identity of the judge, or certain other particulars concerning the pending case. This argument is jejune.

Doral knew the identity of the parties and, notwithstanding its suggestion to the contrary, it clearly knew the court in which the case was pending. It also knew that its prized contract had been derailed and that its servicing rights thereunder were in grave danger. It had no reason to believe that the existing parties would sacrifice their own parochial interests in order to safeguard its interests. Last but not least, it knew that temporary restraining orders have a short shelf life, see Fed. R. Civ. P. 65(b)(2)-(3), and that, therefore, time was of the essence.

If more were needed — and we doubt that it is — we note that Doral had the same basic information available to it in mid-July as on October 2 (when Doral's decision to intervene came to fruition). At that juncture, it had no difficulty in tracking down the case. It could have taken exactly the same steps in mid-July.

To recapitulate, the record reflects undue delay by a putative intervenor with knowledge that its rights were in jeopardy. The record also reflects an unfavorable balance of harms and an absence of ameliorating circumstances. Accordingly, we conclude, without serious question, that the lower court did not abuse its discretion in holding that Doral — a sophisticated financial institution with lawyers on staff — waited too long to seek intervention as of right. See, e.g., In re Lease Oil

Antitrust Litig., 570 F.3d at 250; Greenblatt, 964 F.2d at 1231-32; see also Heartwood, 316 F.3d at 701 ("Prompt [intervention] after settlement does not indicate timeliness, particularly where there is evidence that the intervenor should have known the suit could impact its interest for some time prior to the settlement.").

## B. **Permissive Intervention**.

Permissive intervention is governed by the provisions of Federal Rule of Civil Procedure 24(b). In this instance, we need not rehearse the elements needed to succeed under that rule. It suffices to say that when a putative intervenor seeks both intervention as of right and permissive intervention, a finding of untimeliness with respect to the former normally applies to the latter (and, therefore, dooms the movant's quest for permissive intervention). See Lucas v. McKeithen, 102 F.3d 171, 173 (5th Cir. 1996); Greenblatt, 964 F.2d at 1230 n.2; Orange County v. Air Cal., 799 F.2d 535, 538-39 (9th Cir. 1986).

One might think at first blush that a somewhat different rule should apply because Doral's motion seeks permissive intervention not for the purpose of being heard on the merits of the dispute (although that may be its hidden agenda) but, rather, for the stated purpose of challenging the sealing order. In an appropriate case, that altered focus might make a difference. But this is not such a case.

We begin with the basics. When a third party essays a challenge to a sealing order, permissive intervention is the procedurally correct vehicle. See Pub. Citizen v. Liggett Group, Inc., 858 F.2d 775, 783 (1st Cir. 1988). The timeliness requirement still pertains, but with a wrinkle: the time of acquisition of knowledge of the sealing order itself, if different from the time of acquisition of knowledge of the suit, must be factored into the equation. See, e.g., id. at 785.

The district court did not separately address this aspect of Doral's motion. This omission is understandable for two reasons. First, Doral did not file a proposed complaint when moving for intervention, though required to do so. See Fed. R. Civ P. 24(c) (stating that a motion for intervention must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought"). Second, Doral neither filed two separate motions nor made two separate formulations of the calculus of timeliness. It suggested instead, at least by implication, that exactly the same temporal considerations pertained to both branches of its motion to intervene.

Doral's briefs on appeal follow this pattern. They do not separately discuss the timeliness of the two branches of its motion. The absence of developed argumentation on an issue is tantamount to abandonment of that issue. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Doral has failed

twice — once in the court below and again in this court — to offer any argument that timeliness should be measured differently vis-à-vis its request for permissive intervention. Consequently, we treat the district court's finding of untimeliness with respect to Doral's request to intervene as of right as applying with undiminished force to Doral's request for permissive intervention.

That finding remains unimpugnable. As we explain below, Doral's challenge to the sealing order, as framed, is inextricably intertwined with its claim of an entitlement to intervene as of right.

According to Doral's briefs, it sought access to the sealed materials through permissive intervention for the sole purpose of "know[ing] precisely what happened" so that it might "secure a remedy" for itself. Appellant's Br. at 7. These assertions fit tongue and groove with Doral's attempts to excuse its tardiness in moving to intervene as of right because the sealing order prevented it from acquiring precise knowledge about the particulars of the litigation. We rejected that argument in the Rule 24(a) context, see supra Part II(A), and it is no more hardy in the Rule 24(b) context.

The discretion afforded to the district court under Rule 24, substantial in any event, is even broader when the issue is one of permissive intervention. See Navieros Inter-Americanos, 120 F.3d at 320. Because it is readily apparent why the district

court treated the two branches of Doral's motion to intervene as a unit, we can proceed with appellate review. See Negrón-Almeda, 528 F.3d at 23 (explaining that when a trial court's order is imprecise, the court of appeals frequently "can comb relevant parts of the record to discern the authoring court's intention").

That review need not detain us. We think it follows from what we have said that our analysis of Doral's attempt to challenge the sealing order is enmeshed with our analysis of the timeliness factors discussed above. See supra Part II(A). Doral knew of the sealing order virtually from the moment that it learned of the case itself, yet it delayed any challenge for some two and one-half months. In practical terms, Doral postponed any action until after the original parties had negotiated a settlement; this is particularly important with respect to the sealing order because confidentiality was something for which the parties had bargained.

In addition, this aspect of Doral's motion exacerbates the prejudicial effect of its attempt to intervene on the merits. The purpose behind a motion to intervene is a relevant datum in the timeliness analysis. Greenblatt, 964 F.2d at 1230-34; Pub. Citizen, 858 F.2d at 786. Doral's request for permissive intervention sought to reopen a settled case and reverse a sealing order exclusively for its own benefit, not to vindicate a right of

public access.  Thus, the two prongs of Doral's attempt to waylay the parties' confidential settlement merge into one.

In all events, Doral was not prejudiced by a lack of access to the district court record.  It had an opportunity to obtain the documents it needed to evaluate its position by executing a confidentiality agreement.  Even though it successfully negotiated the terms of that agreement, it refrained from signing the document.  The record contains no satisfactory explanation as to why this sort of exchange would not have satisfied Doral's need to see the relevant papers.[7]

We add a coda.  Doral's motion to intervene for the purpose of challenging the sealing order touches upon an issue of transparency in the federal judicial system.  Placing court records out of public sight is a serious step, which should be undertaken only rarely and for good cause.  Sealing orders are not like party favors, available upon request or as a mere accommodation.  See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597-99 (1978); In re Gitto Global Corp., 422 F.3d 1, 6 (1st Cir. 2005).  In the first instance, however, decisions about whether or

---

[7] We note that this avenue still remains open to Doral.  The district court expressly provided in its order that it was "not preclud[ing] the parties and Doral from making any disclosure agreements through good faith out-of-court negotiations." Freddie Mac has offered to reveal the contents of the TRO and the settlement agreement pursuant to a confidentiality agreement (already negotiated between Doral and Freddie Mac), and Doral has never requested any other documents from Freddie Mac.

not to seal are committed to the sound discretion of the district court.  Nixon, 435 U.S. at 597-99; In re Globe Newsp. Co., 920 F.2d 88, 96 (1st Cir. 1990).  Here, the absence of a timely challenge to the sealing order precludes any full-blown inquiry into the propriety of that order.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we discern no abuse of discretion in the district court's denial of Doral's untimely motion to intervene.

**Affirmed**.