PUERTO RICO TELEPHONE
COMPANY, INC.,
Plaintiff,

v.

SAN JUAN CABLE, LLC, Defendant.

Civil No. 11–2135 (GAG).

United States District Court,
D. Puerto Rico.

Signed Feb. 25, 2014.

See also 885 F.Supp.2d 534.

Hugh M. Stanley; John Q. Lewis; Luis A. Oliver–Fraticelli; Michael C. Brink, Richard A. Dean, Patrick J. Pascarella, Cleveland, OH; Anne Swoda–Cruz; Dylan M. Carson, Sandy M. Eloranto, Denver, CO; Ricardo L. Ortiz–Colon, Hato Rey, PR, for Plaintiff.

Brian K. Grube, Johanes C. Maliza, Nicholas B. Wille, Tracy K. Stratford, Thomas Demitrack, Cleveland, OH; Michael R. Shumaker; Kathryn M. Fenton, Washington, DC; Orlando Fernandez, for Defendant.

### *OPINION AND ORDER*

GUSTAVO A. GELPÍ, District Judge.

Armando Díaz ("Díaz"), seeks to intervene in the instant action and requested leave to file a Complaint of Intervention "on behalf of himself and the members of the class defined therein, for the purpose of asserting the claims of Puerto Rican customers of San Juan Cable, LLC d/b/a One Link Communications ("OneLink" or "Defendant") who have suffered antitrust injury as a result of OneLink's [alleged unlawful and anticompetitive] actions." (*See* Docket No. 224.) Pres-

ently before the court is Díaz's Motion for Leave to File Complaint of Intervention at Docket No. 224. Plaintiff, Puerto Rico Telephone Company, Inc. ("PRTC") opposed the intervention sought. (*See* Docket No. 232.) Similarly, OneLink opposed Díaz's motion for intervention. (*See* Docket No. 233.) After a careful review of the parties' submissions, the procedural posture of this case and pertinent law, the court **DENIES** Díaz's motion to intervene at Docket No. 224.

### I. Discussion

The Federal Rules of Civil Procedure contemplate two types of motions to intervene: intervention of right, Fed.R.Civ.P. 24(a), and permissive intervention, Fed.R.Civ.P. 24(b). The differences are significant. The rule governing permissive intervention provides, in part:

> On timely motion the court may permit anyone to intervene in an action who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. (. . .) In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

██ Fed.R.Civ.P. 24(b). However, even when each of these elements is satisfied, a court may nonetheless exercise its discretion to deny the motion to intervene. *Pub. Serv. Co. of New Hampshire v. Patch,* 173 F.R.D. 17, 29 (D.N.H.1997) *aff'd,* 136 F.3d 197 (1st Cir.1998). *See New York News, Inc. v. Kheel,* 972 F.2d 482 (2d Cir.1992). The express language of Rule 24(b) specifies that the principal consideration a court must weigh in exercising this discretion is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *See Patch, supra.* The discretion afforded to the district court under Rule 24, substantial in any event, is even broader when the issue is one of permissive intervention. *R & G Mortgage Corp. v. Fed. Home Loan Mortgage Corp.,* 584 F.3d 1, 11–12 (1st Cir.2009); *see also Navieros Inter-Americanos, S.A. v. M/V Vasilia Express,* 120 F.3d 304, 320 (1st Cir.1997). In the case

of a motion to intervene as of right, the district court's discretion is somewhat more constrained than in the case of a motion for permissive intervention. *R & G Mortgage,* 584 F.3d at 8.

Whether intervention be claimed of right or as permissive, it is at once apparent, that the application must be "timely." *Culbreath v. Dukakis,* 630 F.2d 15, 17 (1st Cir. 1980). If untimely, intervention must be denied. *Id.* The timeliness requirement is often applied less strictly with respect to intervention as of right. *R & G Mortgage,* 584 F.3d at 8; *see e.g., Navieros,* 120 F.3d at 320. The court may be more strict in assessing the issue of timeliness under a Rule 24(b) motion than under a Rule 24(a) motion. *Banco Popular de Puerto Rico v. Greenblatt,* 964 F.2d 1227, 1230 (1st Cir.1992). Thus, a timeliness inquiry is more rigorous when a movant is seeking permissive intervention. Regardless, when ruling on a request for intervention, the district court's discretion is appreciable, and the timeliness requirement retains considerable bite. *See R & G Mortgage,* 584 F.3d at 8.

Here, Díaz seeks permissive intervention pursuant to Rule 24(b)(1). District courts have "broad discretion" when deciding whether or not to grant permissive intervention under Rule 24(b). *Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 641 (1st Cir.1989). Rule 24(b) gives the judge discretion to allow intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." *Daggett v. Comm'n on Gov. Ethics & Election Practices,* 172 F.3d 104, 112–13 (1st Cir.1999). To justify his intervention, Díaz solely argues that the claims asserted in the proposed Complaint of Intervention certainly have questions of law and fact in common with the main action filed by PRTC. (*See* Docket No. 224–1 at 3.) Díaz, however, fails to present any other argument for the court to consider.

The parties do not dispute that some of Díaz's claims share common questions of law and fact with those present in PRTC's Complaint. As such, and given the fact that "the proposed Complaint of Intervention is to a large extent a copy of PRTC's Amended Complaint," Díaz likely satisfies the low threshold requirement of common questions of law or fact. (*See* Docket No. 224–1 at 2.) However, even where this necessary condition is present, the rule merely *permits* intervention at the discretion of the court. *Daggett,* 172 F.3d at 112–13; *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n,* 197 F.3d 560, 568 (1st Cir.1999). The district court can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion. *See United States Postal Serv. v. Brennan,* 579 F.2d 188, 191–92 (2d Cir.1978); *Daggett,* 172 F.3d at 113. Both PRTC and OneLink argue that Díaz's request to intervene is untimely and that as a whole the circumstances of this case militate in favor of denying intervention.

### A. The Timeliness Determination

When intervention is at issue, timeliness is a "prevenient question" that "stands as a sentinel at the gates whenever intervention is requested and opposed," *R & G Mortgage,* 584 F.3d at 7 (quoting *Greenblatt,* 964 F.2d at 1227 (internal quotation marks omitted)). Because a request for intervention is subject to the precondition that such application is "timely" the analysis begins here. The First Circuit has made it pellucid that Rule 24's timeliness requirement is critical. *Greenblatt,* 964 F.2d at 1230; *see Caterino v. Barry,* 922 F.2d 37, 40 (1st Cir.1990); *United Nuclear Corp. v. Cannon,* 696 F.2d 141, 143 (1st Cir.1982); *NAACP v. New York,* 413 U.S. 345, 365, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973).

Timeliness is a threshold question addressed at the sound discretion of the court and involves the following four handy factors recognized by the First Circuit: (1) the length of time the applicant knew or reasonably should have known that its interests were at risk before he moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice to the applicant should intervention be denied, and; (4) any special circumstances militating for or against intervention. *R & G Mortgage,* 584 F.3d at 7; *see Greenblatt,* 964 F.2d at 1227. Each of these

factors must be appraised in light of the posture of the case at the time the motion is made. *R & G Mortgage, supra; see also Geiger v. Foley Hoag LLP Ret. Plan,* 521 F.3d 60, 65 (1st Cir.2008). This threshold determination is "inherently fact-sensitive and depends on the totality of the circumstances." *R & G Mortgage Corp.,* 584 F.3d at 7; *Greenblatt,* 964 F.2d at 1230–31.

In evaluating said mosaic, the status of the litigation at the time of the request for intervention is "highly relevant." *Id. See Greenblatt, id.* As a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies. *Id.* The more advanced the litigation, the more searching the scrutiny which the motion must withstand. *Id.* Nevertheless, the point to which a suit has progressed, while relevant, is not the dispositive factor in determining timeliness. There is no bright-line rule delineating when a motion to intervene is or is not timely. Instead, courts must decide the question on a case-by-case basis, examining the totality of the relevant circumstances. *See NAACP,* 413 U.S. at 366, 93 S.Ct. 2591; *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 784 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *Dukakis,* 630 F.2d at 17. "The purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court." *Dukakis,* 630 F.2d at 22. The court will weigh all circumstances present in deciding whether to grant intervention and will briefly address the four-factor timeliness test *seriatim.*

**1. Length of time Díaz knew or reasonably should have known that his interests were at risk before he moved to intervene**

The first factor focuses on actual or constructive knowledge and/or notice of possible jeopardy. A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights. *Greenblatt,* 964 F.2d at 1231; *Caterino,* 922 F.2d at 40–41. Perfect knowledge of the particulars of the pending litigation is not essential to start the clock running; knowl-

edge of a measurable risk to one's rights is enough. *Id.* In conducting a timeliness inquiry, there are no ironclad rules about just how celeritous, in terms of days or months, a person must move to protect himself after he has acquired the requisite quantum of knowledge. *R & G Mortgage,* 584 F.3d at 8. The passage of time is measured in relative, not absolute, terms. *Id.* Thus, what may constitute a reasonably prompt action in one situation may be unreasonably dilatory in another. *Id. cf. Geiger,* 521 F.3d at 65 (nine-month delay in moving to intervene reasonable in particular circumstances), *Greenblatt,* 964 F.2d at 1231–32 (three-month delay unreasonable in a different set of circumstances). The timeliness inquiry centers on how diligently the putative intervenor has acted once he has received actual or constructive notice of the impending threat. *See id.*

The law contemplates that a party must move to protect its interest no later than when it gains some actual knowledge that a measurable risk exists. *Greenblatt,* 964 F.2d at 1231; *see also, Culbreath,* 630 F.2d at 21. This does not mean, however, that a potential intervenor can sit idly by and inexcusably await to protect its interest. Once a potential intervenor has acquired such knowledge, the tempo of the count accelerates. The applicant must then act reasonably promptly. *Greenblatt,* 964 F.2d at 1232. Therefore, knowledge of a measurable risk is enough to trigger the applicant's obligation to act.

It is true that a motion to intervene must be filed in a timely fashion. In this case, PRTC filed the instant complaint in November 2011. Díaz requested leave to file a Complaint of Intervention in November 2013. Consequently, Díaz sought intervention two years after Plaintiff filed the original complaint. Moreover, Díaz seeks to intervene at a stage in the proceedings when fact discovery has concluded and expert disclosures are almost finalized. Moreover, the discovery cutoff (January 15, 2014) and deadline to file dispositive motions (February 14, 2014) were rapidly nearing and presently, and summary judgment is ripe for ruling. (*See* Docket No. 117.) As the would-be intervenor, Díaz should have established that the

grounds for intervention were satisfied. As for the first factor—the promptness of Díaz's motion—the court begins by noting that Díaz failed to discuss the timeliness of his motion. Díaz neither mentioned nor applied the timeliness factors. His request for intervention failed to include any pleading or allegation geared towards establishing that indeed his motion was timely or to the contrary, if ill-timed, Díaz failed to justify and explain the reasons for his delay.

 Díaz not only failed to address the timeliness issue, he also failed to explain why he waited two years to request such intervention. He failed to excuse his delay despite the fact that the burden of demonstrating lack of knowledge is on the party seeking intervention. *United States v. Policia de Puerto Rico*, 283 F.R.D. 69, 73 (D.P.R.2012). *See Equal Employment Opportunity Commission v. Westinghouse Electric Corporation*, 675 F.2d 164, 165 (8th Cir.1982). It is important to note that Díaz addressed the timeliness issue for the *first and only time* in response to PRTC's and OneLink's oppositions to his request for intervention. (*See* Docket No. 241 at 4.) This, after PRTC and OneLink both argued in their opposition briefs that Díaz's request was untimely and that he failed to excuse such delay. Both PRTC and OneLink aver that Díaz was not diligent in pursuing a prompt intervention and that his delay is inexcusable. The court agrees.

In response to PRTC's and OneLink's allegations of inexcusable delay, Díaz retorted that he acquired knowledge of this litigation days before filing the motion to intervene. (*See* Docket No. 241 at 4.) Again, PRTC filed its Complaint on November 2011. It was not until two years after, on November 2013, that Díaz decided to seek intervention. As the party moving for intervention, Díaz carried the burden of demonstrating lack of knowledge of this litigation. *United States*, 283 F.R.D. at 73; *EEOC*, 675 F.2d at 165. Pursuant to this well-established doctrine, to justify his late intervention, Díaz had to establish that he was not aware nor had notice of the pending litigation. Díaz alleged that despite the passage of two years since the filing of the case, he acted quickly after learning of

the lawsuit's potential impact on himself and the consumer class. However, Díaz failed to present any evidence to explain why he waited so long. The record is devoid of a justification demonstrating Díaz's lack of knowledge of the ongoing litigation or that he acted with reasonable diligence. That said, Díaz failed to provide the court with an effective explanation meant to excuse his two year delay.

What is more, in his reply, Díaz conceded that the "pleadings filed by PRTC and OneLink opposing the motion to intervene constitute the *first* notice to Díaz that PRTC and OneLink do not intend to protect the rights of Puerto Rico's consumers." (*See* Docket No. 241 at 5.) Díaz sets forth this argument to justify his delay in seeking intervention. It is not plausible that Díaz sought intervention because he believed his interests and those of the putative class may be jeopardized since he admitted that he became aware of this "possibility" *after* reading PRTC and OneLink's oppositions to his intervention request. This is inconsistent with Díaz's justification of his late intervention. Díaz does not justify timely intervention by asserting he "believes" his interests in the case may no longer be protected by the existing parties when he bases this "belief" on pleadings filed *after* he requested intervention. This defies all logic.

Even if the court were to entertain Díaz's argument, it seems unlikely that PRTC intends to hinder the rights of Puerto Rico consumers since the Complaint of Intervention is almost identical to PRTC's Complaint. Díaz admitted that the proposed Complaint of Intervention "is to a large extent a copy of PRTC's Amended Complaint." (*See* Docket No. 224-1 at 2.) Similarly, Díaz does not aver different factual allegations or dissimilar legal arguments than the Plaintiff in the instant case. If PRTC does not intend to safeguard the consumer's interests, then neither does Díaz because he uses the same exact allegations as PRTC. It seems like the interests of the consumer class are in fact represented in this case and the claims asserted by PRTC are intended to do what Díaz and the putative class intend; safeguard the market and, in turn, the consumer class

by exposing OneLink's alleged antitrust and monopolistic actions.

Díaz's two-year delay is puzzling to the court, particularly because it appears Díaz and the putative class have been implicated in the instant litigation from the outset. They had an interest in the merits and result of the case. Their "interest" in these proceedings became apparent since the beginning of litigation, and not later in the game. In fact, by Díaz's own admission, "this Complaint is about OneLink's illegal actions to preserve its exclusive monopoly franchise and stave off competition—in particular, from PRTC, which have allowed OneLink to raise prices to Puerto Rico consumers well above competitive levels in violation of antitrust laws." (*See* Docket No. 224–2 at 1.) This assertion is evidenced throughout PRTC's complaint, which points out that OneLink's alleged anticompetitive actions have affected Puerto Rican consumers. By Díaz's own admission and the allegations included in the Complaint of Intervention, it is clear that the consumers' interests have been involved in the instant litigation since the start of the case. Hence, a delay of two years under these circumstances seems unjustifiably late.

Furthermore, Díaz admitted that this case has *always* implicated Puerto Rico's consumers. As a result, it is unlikely that he acquired knowledge that the case could jeopardize his and the consumer class' rights two years after the filing of the complaint. The issue of when Díaz acquired knowledge of the case and that his interests could be jeopardized is aggravated in light of the press and media coverage this case attracted. (*See* Docket No. 231–1). The legal battle that ensued between the parties was widely documented by the media.[1] Thus, the court can safely infer that Díaz "reasonably should have known" of this litigation at a much earlier stage. *See Greenblatt*, 964 F.2d at 1230.

Díaz also alleges that the exhibits submitted by PRTC to prove proper knowledge and/or notice of the claim (via significant press coverage) make no mention of allegations made by PRTC concerning injury to consumers. From a simple review of the exhibits submitted by PRTC at Docket No. 231–1, (along with other press clippings, articles and documents the court easily found on the web) Díaz's contention that such news articles "at best could have been read by someone like Díaz as reporting a squabble between two companies, but nothing more," seems naive and unlikely. (*See* Docket No. 241 at 5.) The court notes, for example, that in Exhibit A at Docket No. 232–1, Ileana Molina Bachman, Corporate Communications Vice President of PRTC, is quoted as saying that the entrance of Claro into the market will result in benefits to the *consumers*. Also, in Exhibit B at Docket No. 232–1 the *consumers* are mentioned as playing a *key role* and Claro's president publicly urged *consumers* to continue to exert pressure to the Telecommunications Regulatory Board to issue the cable franchise to Claro to allow them to provide service in Puerto Rico, which in turn would benefit *consumers*. Accordingly, a reasonable person could have been on notice that consumer rights were at issue, signaling relevance for Díaz and the consumers in the pending case. These considerations have obvious pertinence here.

Díaz's failure to act until November 2013 amply supports a finding that his motion to intervene was unreasonably late. *See Greenblatt*, 964 F.2d at 1231–32; *Caterino*, 922 F.2d at 40–41; *cf. United States v. Taylor*, 54 F.3d 967, 972 (1st Cir.1995) (explaining that, as a general proposition, "the law ministers to the vigilant, not to those who sleep upon perceptible rights"). A delay of approximately two years is unreasonable, particularly based on the above. As such, the court finds the first factor of the four-prong timeliness inquiry strongly weighs against allowing intervention.

### 2. Prejudice to the original parties

▬▬▬ The second prong of the test focuses on whether the delay in seeking intervention prejudices the existing parties. The issue of prejudice to the existing litigants is

---

**1.** While conducting a basic search on the web regarding the PRTC and OneLink controversy, the court found numerous articles, opinions, case summaries, public court documents of the instant case, and previous proceedings.

perhaps the most important element of a timeliness inquiry. *See Fiandaca v. Cunningham*, 827 F.2d 825, 834 (1st Cir.1987). "[T]he purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court." *Greenblatt*, 964 F.2d at 1232. One of the core purposes of the timeliness requirement is to prevent disruptive, late-stage intervention that could have been avoided by the exercise of reasonable diligence. *R & G Mortgage*, 584 F.3d at 9; *see United Nuclear Corp. v. Cannon*, 696 F.2d 141, 143 (1st Cir.1982). As the First Circuit stated, "The timeliness requirement was not designed to penalize prospective intervenors for failing to act promptly; rather, it insures that existing parties to the litigation are not prejudiced by the failure of would-be intervenors to act in a timely fashion." *Fiandaca*, 827 F.2d at 834; *see Garrity v. Gallen*, 697 F.2d 452, 455 (1st Cir.1983).

By the time Díaz sought to intervene, the original parties had been litigating for two years. His request for intervention, as explained earlier, comes at a stage in the proceedings when the parties completed fact discovery, were on the verge of concluding expert discovery, and the cutoff dates to conclude discovery and file dispositive motions were right around the corner. As of now, they have expired. Moreover, the parties have complied with all court-mandated deadlines and are presumably entertaining the idea of a settlement. PRTC argues that intervention at this late stage would require the reopening of a nearly completed year-long rigid discovery schedule. OneLink agrees and raises an issue the court cannot ignore: reopening fact discovery to address the collateral issues concerning Díaz and the putative class. OneLink also argues this will inevitably lead to a completely new round of expert analysis to address all sorts of class-related issues. The intervention sought raises new substantive questions concerning consumer issues, new theories of competitive effects and damages, as well as class certification proceedings and related matters. It is clear then, that in the case at bar the intervention sought would delay the court's schedule and imposed deadlines. What is more, it would require the court to entertain class certification proceedings, reopen fact and expert discovery, allow time for Díaz and the putative class to conduct expert discovery and prepare reports, and add a layer of complexity to an already intricate case.

PRTC and OneLink also agree that Díaz's attempt to intervene may well have interfered with or even interrupt the potential for a settlement process, thus prejudicing the parties who had invested significant amounts of time, money, and effort in an attempt to compose their differences and reach possible amicable solutions. The court also notes that the original parties have shouldered the legal and financial burden of litigation so, permitting intervention at this time may be inadequate. The court must "prevent last minute disruption of painstaking work by the [original] parties and the court". *See Culbreath*, 630 F.2d at 22. It seems the intervention sought would do just that in addition to unduly delaying the adjudication of the rights of the original parties.

From these facts, permitting Díaz and the consumer class to intervene at this time would prejudice both Plaintiff and Defendant. Díaz alleges with some force that there would be no disruption or delay in the proceedings that have been ongoing for two years. He also argues that all the work that has been done by PRTC and OneLink will not be affected. The court disagrees. "[T]his is the kind of judgment on which the district court's expertise and authority is at its zenith." *Dingwell*, 884 F.2d at 641; *Daggett*, 172 F.3d at 113. Because Díaz's proposed intervention will disrupt the course of the ongoing litigation, the harm that intervention would cause to the original parties [and the court] is manifest. *See Greenblatt*, 964 F.2d at 1232.

### 3. Prejudice to Díaz—the movant for intervention

 The third prong of the four-part test focuses on what prejudice an applicant will suffer if intervention is denied. This requires the court to determine whether the movant, had intervention been allowed, would have "enjoy[ed] a significant probability of success on the merits." *Greenblatt*, 964 F.2d

at 1232; *see also Garrity*, 697 F.2d at 457; *Culbreath*, 630 F.2d at 23; *United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 219 (2d Cir.1990). In any event, the denial of intervention will not cause Díaz or the putative class significant prejudice. Díaz still has an adequate remedy. It may bring a separate action against OneLink, if he so chooses. Díaz even argues that it is true that Puerto Rico's consumers may file a separate action but they will likely be bound by any decisions made in this litigation. (*See* Docket No. 241 at 8.) The court cannot forestall what may come of a future litigation, if any, let alone its ruling; so this argument is unconvincing. The court's decision to deny Díaz's request for permissive intervention pursuant to Rule 24(b) does not negate Díaz and the putative class a formal and adequate means by which to protect their interest because they have an adequate remedy available. The availability of an adequate alternative remedy softens any plausible claim of prejudice. *R & G Mortgage*, 584 F.3d at 10. *See N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 153 F.R.D. 69, 72 (S.D.N.Y.1994) (explaining that the existence of alternative remedies "is another commonly accepted basis for denying intervention").

#### 4. Exceptional circumstances

The last prong of the test requires the court to consider unusual factors and/or circumstances militating in favor of, or against, intervention. *Greenblatt*, 964 F.2d at 1233. Here, the balance is unaffected. *Id.* Although Díaz and the putative class may suffer some inconvenience if intervention is denied, they have shown nothing exceptional. The parties opposing the motion to intervene, in this case both Plaintiff and Defendant, have identified special circumstances weighing against intervention. In the absence of any mitigating or exceptional circumstances that would warrant intervention, it appears no such circumstances militate in favor of intervention.

The court has weighed all circumstances present. To summarize, these include, but are not limited to: (a) both parties to this litigation oppose the intervention and pray they would suffer significant harm if intervention is allowed; (b) the request for intervention was filed two years after the original parties had shouldered the cost and effort of litigation; (c) Díaz failed to address the timeliness issue, which is fatal; (d) Díaz failed to demonstrate lack of knowledge of the pending litigation, a fact that is aggravated by the ample publicity this case and previous state and administrative litigation received; (e) foreseeable delay in the current proceedings; (f) court mandated deadlines would have to be pushed back; (g) the court would have to entertain class certification proceedings; (h) inclusion of consumer claims and damages incorporate an added layer of complexity to an already complex case; (i) the Complaint of Intervention is, to a large extent, a copy of the original Complaint, so it seems the interests of the putative intervenors are sufficiently protected; and (j) Díaz and the putative class still have an available remedy if they choose to file a separate action.

All these considerations are critical and it follows inexorably that the balance of harms to the existing parties weigh in favor of denying Díaz's motion to intervene. In this case, the four timeliness factors all point the same way and cut sharply against the intervenor. The court need not go further. Díaz failed to shoulder his burden of demonstrating that his motion to intervene is timely. To hold otherwise, would encourage putative intervenors to sit on their rights to the detriment of the parties carrying the load of the lawsuit. *Dukakis*, 630 F.2d 15, 21–22 (1st Cir.1980).

### II. Conclusion

For the foregoing reasons, the court **DENIES** Díaz's Motion for Leave to File Complaint of Intervention at Docket No. 224.

**SO ORDERED.**